407 F.2d 16
 Charles Richard WOLFE, Nickles Steen Wolfe, and Donell
Edward Wolfe, copartners, doing business as Wolfe
Brothers Contractors, and as
individuals, Appellants,
v.
TRI-STATE INSURANCE COMPANY, Liberty National Bank & Trust
Company, United Pacific Insurance Company and
Hoover Equipment Company, Appellees.
 No. 10015.
 United States Court of Appeals Tenth Circuit.
 Feb. 14, 1969, Rehearing Denied April 1, 1969.
 
 Norman E. Reynolds of Reynolds & Ridings, Oklahoma City, Okl. (Robert Buck of Buck & Crabtree, Oklahoma City, Okl., on the brief), for appellants.
 Wayne B. Snow of Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., for appellee, Tri-State Ins. Co. (John W. Swinford, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick Oklahoma City, Okl., for appellee, Liberty Nat. Bank & Trust Co.; and John B. Hayes, of Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for appellees, United Pacific Ins. Co. and Hoover Equipment Co. on the brief), for appellees.
 Before BREITENSTEIN and HICKEY, Circuit Judges, and MARVIN JONES,* Senior Judge, Court of Claims.
 MARVIN JONES, Senior Judge.
 
 
 1
 This is an appeal from an order of the District Court for the Western District of Oklahoma, which reversed a decree of of Referee in a bankruptcy proceeding. The Referee, after a hearing on the objections of four creditors, had granted the bankrupts a discharge. The District Judge vacated the order of the Referee and denied the bankrupts a discharge. Hence this appeal.
 
 
 2
 The appellants are three brothers, Don, Charles and Nick Wolfe who were partners in the contracting business for about 7 years before bankruptcy proceedings commenced December 23, 1960. After many continuances, the objectors filed their objections to the discharge on January 30, 1962, but hearings on these objections were not commenced until 5 years later, April 14, 1967.
 
 
 3
 These brothers were young men, under 30 years of age, with no more than a high school education from a small country high school at Retrope, Oklahoma. Though successful in the business of contracting for grassing of highways and other projects, the expansion of their business into the dirt-moving business in late 1959 and 1960 proved disastrous and bankruptcy ensued.
 
 
 4
 The brothers had divided the company's work so that Don and Charles Wolfe handled the projects in the field and Nick handled the office work until his health failed in October, 1959. Don attempted to supervise both the office work and projects in the field. They relied upon a bookkeeper under the supervision of a certified public accountant to keep the books. This CPA, Randall Linney, prepared and certified a financial statement for the Wolfe brothers dated December 1, 1959 at the request of the Vice-President of the Liberty National Bank where the brothers were obtaining credit, which showed a net worth of $502,388.44.[1] During the spring and summer of 1960, many substantial loans were made to the Wolfe Brothers business through this bank.
 
 
 5
 After the business had collapsed and the brothers voluntarily went into bankruptcy, December 23, 1960, more than 6 years elapsed before hearings by the Referee in Bankruptcy were held at Oklahoma City, April 14, 1967. By that time, the bookkeeper was ill and did not attend the hearings nor did the CPA Linney who had lost his CPA business. After hearing the testimony of the brothers as well as the banker, the Referee granted discharge to the bankrupts. Four creditors, Liberty National Bank and Trust Company, Tri-State Insurance Company, United Pacific Insurance Company and Hoover Equipment Company, objected formally to the bankrupts' discharge under Section 14, sub. c(3) of the Bankruptcy Act, 11 U.S.C.A. 32 sub. (c), which reads in pertinent part as follows:
 
 
 6
 The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition * * *.
 
 
 7
 To preclude discharge under this section, the objector must show these elements: (1) a written statement, (2) materially false as to financial condition, (3) the falsity of which the bankrupt knows, (4) by the use of which statement property must be obtained or credit extended, and (5) the creditor must have relied upon the statement. Rogers v. Gardner, 226 F.2d 864 (C.A.9th Cir.1955). 1955).
 
 
 8
 Appellants direct their argument to elements 3 and 5.
 
 
 9
 Appellants admit the financial statement contained errors but argue that they being uneducated and unsophisticated men relied heavily upon their CPA and thus had no knowledge of any falsity as to the financial statement. This CPA had been with them for several years and certified the statement. They believed him to be accurate. These young men had every right to rely upon his judgment, especially since their business was rapidly expanding and they were working hard in the field as well as trying to handle office work. Even more so since one brother who usually did this work was in the hospital during this period. This was their first venture into the more complicated area of construction work. Both brothers testified that they did not instruct the CPA to do other than to make a correct financial statement. They had every right to rely upon him to make a correct statement, as do even sophisticated men of long business experience rely upon their trusted CPA to handle these affairs. Therefore, we cannot agree with the reviewing judge that these bankrupts had sufficient knowledge of the falsity of the statement. Nor can we agree with the reviewing court that the bankrupts were guilty of reckless negligence by failure to check over the statement. The evidence indicates that the CPA made and gave the statement to the bank without instruction on the part of the bankrupts.
 
 
 10
 This court has held that for a statement to be 'false,' more than an erroneous statement is necessary. It must be one that is intentionally false or one that is intended to deceive and must be relied upon. American National Bank of Denver v. Rainguet, 323 F.2d 881 (C.A. 10th Cir.1963).
 
 
 11
 We have made a careful review of all the records before the Referee and we find, as the Referee did, that there is not substantial evidence to show an intent to defraud or deceive on the part of any of the bankrupts in the submission of the financial statement, which was requested by the bank from the CPA. To justify the denial of the bankrupts' discharge, there must be a 'direct statement, either negative or positive, which is false.' Kansas Federal Credit Union v. Niemeier, 227 F.2d 287, 290 (C.A. 10th Cir.1955). There is conclusive evidence that the bank did not rely upon the falsity in the financial statement but would have extended such credit regardless of these errors. This is clearly shown by the testimony of the bank official that if the bankrupts' net worth had been only $250,000 the loan would still have been made with the security he received, as well as by his further testimony that every single loan was secured even after the financial statement was received. As shown by the banker's own testimony which was never refuted, the errors in the financial statement did not cause the credit to be extended. Therefore, the 'proximate cause' test which the courts formulated to deal with such errors has not been met. Becker v. Shields, 237 F.2d 622 (C.A. 8th Cir.1956); In re Lessler, 74 F.2d 249, 251 (C.A. 2d Cir.1934).
 
 
 12
 We are aware that the burden of proof shifted to the bankrupts to prove that the creditors did not rely upon the financial statement and we believe the bankrupts proved this by a preponderance of the evidence.
 
 
 13
 It has been held that a circuit court on appeal should not disturb findings and judgment of the referee who holds a hearing, takes the testimony, sees the witnesses 'unless for the most cogent reasons appearing in the record.' Kansas Federal Credit Union v. Niemeier, 227 F.2d 287, 291 (C.A. 10th Cir.1955). See also Industrial Bank of Commerce v. Miller,171 F.2d 543 (C.A.2d Cir.1948). We find no cogent reasons appearing on the record to reject the findings of the Referee. The Referee was justified in overruling the objection from the creditors when the testimony of the banker showed there was insufficient reliance by the bank upon the financial statement, and especially since the testimony of the bankrupts showed there was insufficient knowledge on their part. Therefore, the Referee's findings were not clearly erroneous when he granted discharge after hearing this testimony. It was error for the reviewing judge to summarily reject the findings of the Referee.
 
 
 14
 Finally the unconscionable delay of over 5 years clearly violated Order 32 of General Orders in Bankruptcy, 11 U.S.C. page 2013, which directs that a time should be fixed for objection to a discharge; and the courts have held that the bankrupt is entitled to prompt hearings on application for a discharge, and that the judge will hear the matter at the 'earliest opportunity.' In re Karp, 11 F.Supp. 129 (D.C.Conn.1935). The record is silent as to the reasons why there was no earlier opportunity for the judge to hear this matter.[2] The objecting creditors offer no explanation for this delay. The bankrupts should not be made to answer for it.
 
 
 15
 We want to emphasize the injustice of this unseemly delay. In this way the whole purpose of the Bankruptcy Act is largely frustrated. The primary purpose of the Act is to give an unfortunate businessman, who has failed, a change to start anew, a chance to profit by his own mistakes. Otherwise, he could hardly engage in business at all. The bankrupt may have, and usually has, made mistakes. Mistakes are inevitable, but may be corrected, and knowledge gained thereby.
 
 
 16
 Right or wrong, an enlightened government has seen fit to provide a new chance for a man who has lost all. This he cannot do, if creditors, even just creditors, may by legal methods claim every dollar he earns. No business could operate under such conditions. At any rate that is the law in practically all civilized countries.
 
 
 17
 The very nature of bankruptcy legislation calls for action within a reasonable time and usually there is early action. But to allow the creditors five separate continuances covering more than a year before they even filed their objections; and then have another 5 years elapse before a hearing is scheduled on the objections, during which time it would be most difficult for any bankrupt to start or operate any kind of a business, is beyond the range of reason, that is, unless there is a satisfactory explanation, which is entirely absent from this record. The delay is even more tragic when young men are thus stymied.
 
 
 18
 Appellants relied on a certified public accountant. Was that wrong? Every businessman of any consequence in this country relies on such accountants, as do most of the government agencies, local, state, and national. Many of them otherwise would not know their own financial condition. They rely on them in making financial statements and reports. Certified public accountancy is a profession. If the businessman is required to check the trained accountant, why employ him in the first place? Why not rely on a good bookkeeper who would be much less expensive? No, reliance on trained, licensed public accountants is almost universal. It has become the custom of the trade.
 
 
 19
 The order of the District Court is reversed and the case is remanded with instructions to enter appropriate orders discharging the appellants under the Bankruptcy Act.
 
 
 
 *
 Sitting by designation of the Chief Justice
 
 
 [1]
 The admitted and disputed errors totaled approximately $177,000.00, which left a net worth of approximately $325,000.00
 
 
 [2]
 The record does show that after the case was transferred January 30, 1968, this reviewing Judge acted promptly and diligently by filing his memorandum opinion February 9, 1968, and entering the order denying discharge February 21, 1968