SEYMOUR, Circuit Judge.
 

 This appeal is from a judgment of the district court affirming a bankruptcy judge’s order denying a discharge in bankruptcy to James George Stafos. The bankruptcy court denied discharge to Stafos pursuant to 11 U.S.C. §§ 32(c)(1) and 32(c)(3).
 
 [1]
 
 On appeal, the district court: (1) affirmed the denial of discharge under 11 U.S.C. § 32(e)(3); (2) found that the delay in the proceedings did not require that Stafos be allowed discharge; and (3) reversed the denial of discharge based on 11 U.S.C. § 32(c)(1). Stafos argues that the district court erred because the denial of discharge under 11 U.S.C. § 32(c)(3) was unwarranted and the excessive delay in the bankruptcy proceedings requires discharge. We disagree with Stafos and affirm the denial of discharge pursuant to 11 U.S.C. § 32(c)(3).
 
 [2]
 

 Stafos was a produce dealer registered under the Perishable Agricultural Commodities Act of 1930. With a transmittal letter dated February 15, 1967, Stafos furnished, through his accountant, a written financial statement to Produce Reporter Company, a credit agency for the fresh fruit and vegetable industry. The statement claimed a net worth for James G. Stafos Produce of $95,960.64 as of December 31, 1966, and a net profit of $46,598.85 for the year January 1,1966 to December 31,1966. Based on the financial statement, Produce Reporter Company gave Stafos a “credit worth financial responsibility” rating in excess of $50,000.00, which was published in the 1967 Spring Blue Book. However, Stafos’ individual federal and state income tax returns for 1966 showed a net loss of $9,442.70 for James Stafos Produce.
 

 Robert Bell was also a licensed produce dealer. He testified that he relied on Sta-fos’ Blue Book credit rating when he furnished credit to Stafos in 1967 for the purchase of watermelons and cantalopes. Sta-fos did not pay for the produce. Bell testified that he would not have extended credit to Stafos except for the credit rating in the Blue Book.
 

 After a hearing in 1968, the Department of Agriculture ordered Stafos to pay Bell reparations. The order was later reduced to judgment against Stafos in a United States District Court on December 11,1970. On December 24,1970, Stafos filed a voluntary petition in bankruptcy. On August 8, 1971, Bell filed objections to a discharge in bankruptcy. In January 1975, the bankruptcy court ordered Bell to file amended objections. Trial on the objections to discharge was held in 1977. The bankruptcy court denied discharge to Stafos on January 23, 1979.
 

 I.
 

 Denial of Discharge to Stafos Under 11 U.S.C. § 32(c)(3)
 

 The standard of review for bankruptcy matters, “both at the district court and court of appeals level, is whether the findings of the bankruptcy judge are clear
 
 *1346
 
 ly erroneous.”
 
 In re White House Decorating Co. v. Eckles,
 
 607 F.2d 907, 910 (10th Cir. 1979). It is only the findings of the bankruptcy judge, not findings of the district court, which are binding upon the court of appeals unless clearly erroneous.
 
 Girsh v. Katchen,
 
 382 F.2d 560, 561 (10th Cir. 1967).
 

 One circumstance in which discharge in bankruptcy should be denied is found in 11 U.S.C. § 32(c)(3):
 

 “(c) The court shall grant the discharge unless satisfied that the bankrupt has ... (3) while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation . . . . ”
 

 To successfully object to another’s discharge in bankruptcy under section 32(c)(3), a litigant must establish the five elements enumerated in
 
 Wolfe v. Tri-State Insurance Co.,
 
 407 F.2d 16, 18-19 (10th Cir. 1969):
 

 “To preclude discharge under this section, the objector must show these elements: (1) a written statement, (2) materially false as to financial condition, (3) the falsity of which the bankrupt knows, (4) by the use of which statement property must be obtained or credit extended, and (5) the creditor must have relied upon the statement.”
 

 (Citation omitted). Stafos contends that the last four of these elements were not established and that the related findings of the bankruptcy judge are clearly erroneous.
 

 Stafos first argues that the February 1967 financial report submitted for a credit rating in the “Blue Book” was not materially false because (1) neither the district court nor the bankruptcy judge explained why it was false, (2) Bell produced no expert testimony showing it to be “materially false,” and (3) no evidence was produced showing the tax return was correct. However, the February financial statement showed a net profit of James G. Stafos Produce for the year 1966 of $46,598.85, with a net worth of over $95,000.00, at the same time that Stafos’ 1966 individual income tax return showed a net loss of James G. Stafos Produce of $9,442.70. Tax returns are required reports, certified as accurate by the taxpayer under penalty of perjury. In the absence of any evidence of inaccuracy, the bankruptcy judge was justified in finding that Stafos’ 1966 tax return was correct and that the February 1967 statement submitted to the Blue Book was false. The submission of a false statement showing a comfortable profit instead of an actual loss is material when its purpose is to obtain a good credit rating.
 

 Stafos next argues that his knowledge of the false February 1967 financial statement was never shown by Bell. However, there is adequate evidence in the record to support the finding that Stafos was aware of the February 1967 statement. Stafos filed a pleading in response to a request for admissions and admitted his signature to the February 1967 financial statement, although this admission was later disputed by one of Stafos’ witnesses who claimed that Stafos’ accountant, George Sinderson, signed the 1967 financial statement. Even if Stafos’ witness was correct, the letter of transmittal noted that the February 1967 financial statement was furnished at the request of Stafos. Furthermore, the evidence also shows Stafos received a copy of the February 1967 financial statement and letter of transmittal. Therefore, the record adequately supports the inference that Stafos knew of the false statement.
 
 [3]
 

 
 *1347
 
 Stafos further argues that the fourth and fifth elements of the
 
 Wolfe
 
 test for 11 U.S.C. § 32(c)(3) were not established because the evidence was not sufficient to show that credit was extended to him, or that Bell relied upon the credit rating. However, the record contains adequate evidence to the contrary. On direct examination, the following exchange took place:
 

 “(Q) (By Mr. Venters) Now, Mr. Bell, would you have made the arrangement [consignment] with Mr. Sta-fos, except for his rating that appeared in the blue book in April of 1967, and your conversations with him in Kansas City in May of 1967, in reference to his financial stability?
 

 (A) [Mr. Bell] No, I would not have.”
 

 Rec., vol. VII, at 88. Although other matters may have also entered into Bell’s extension of credit to Stafos, “it is not essential that the financial statement be the sole cause for advancement of credit, [for] partial reliance is sufficient.”
 
 Rogers v. Gardner,
 
 226 F.2d 864, 867 (9th Cir. 1955) (interpreting 11 U.S.C. § 32(c)(3)).
 

 Upon reviewing the record, we are not left with the “ ‘definite and firm conviction that a mistake has been committed’ ” in the bankruptcy judge’s findings concerning 11 U.S.C. § 32(c)(3).
 
 In re McGinnis,
 
 586 F.2d 162, 164 (10th Cir. 1978) (quoting
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). We affirm the district court decision denying Stafos discharge in bankruptcy under 11 U.S.C. § 32(c)(3).
 

 II.
 

 There Was No Unconscionable Delay Requiring That Stafos Be Discharged
 

 Stafos also relies upon
 
 Wolfe v. Tri-State Insurance Co.,
 
 407 F.2d at 20, to argue that the long delay from his filing for bankruptcy in December 1970 to the bankruptcy court’s denial of discharge in January 1979 entitles him to discharge on unconscionability grounds. In
 
 Wolfe,
 
 the court said:
 

 “Finally the unconscionable delay of over 5 years clearly violated Order 32 of General Orders in Bankruptcy, 11 U.S.C. page 2013, which directs that a time should be fixed for objections to a discharge; and the courts have held that the bankrupt is entitled to prompt hearings on application for a discharge, and that the judge will hear the matter at the ‘earliest opportunity.’
 
 In re Karp,
 
 11 F.Supp. 129 (D.C.Conn.1935). The record is silent as to the reasons why there was no earlier opportunity, for the judge to hear this matter. The objecting creditors offer no explanation for this delay. The bankrupts should not be made to answer for it.”
 

 Id.
 
 (footnote omitted). Importantly, Stafos does not dwell upon the language in
 
 Wolfe
 
 which also points out that “[t)he very nature of bankruptcy legislation calls for action within a reasonable time ...
 
 unless there is a satisfactory explanation
 
 ... . ”
 
 *1348
 

 Id.
 
 (emphasis added). In
 
 Wolfe
 
 “[t]he objecting creditors offered no explanation for [the] delay,” and the court found that a “satisfactory explanation” was “entirely absent from [the] record.”
 
 Id.
 

 As distinguished from the
 
 Wolfe
 
 case, Stafos himself caused much of the delay. For example, Stafos appealed a homestead exemption issue to the district court, Tenth Circuit, and the Supreme Court, which denied
 
 certiorari
 
 in 1973.
 
 Stafos v. Jarvis,
 
 477 F.2d 369 (10th Cir.),
 
 cert. denied,
 
 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973). The record also indicates that delay resulted in part from Sta-fos’ recalcitrance in providing records and from motions filed by his attorneys to delay trial, as well as a change in bankruptcy judges. Although some types of delay may be unconscionable and entitle a person to discharge, the circumstances in the instant case do not warrant such a result.
 

 Accordingly, the district court order denying discharge in bankruptcy to Stafos under 11 U.S.C. § 32(c)(3) is affirmed.
 

 [1]
 

 . The Bankruptcy Act of 1898 was repealed by the Bankruptcy Reform Act of 1978, Pub.L.No. 95-598, sec. 401, 92 Stat. 2682, generally effective October 1, 1979.
 
 Id.
 
 sec. 402. Stafos filed his voluntary petition for bankruptcy on December 24, 1970, Bell filed objections to discharge in 1971, and judgment was rendered in these adversary proceedings on January 23, 1979. Thus, this case is governed by the old Act.
 
 See id.
 
 sec. 403, 92 Stat. 2683.
 

 [2]
 

 . The party objecting to discharge in bankruptcy, Robert Bell, has cross appealed from the judgment of the district court insofar as it reversed the bankruptcy judge’s denial of discharge to Stafos under 11 U.S.C. § 32(c)(1). Because we independently affirm the denial of discharge in bankruptcy under 11 U.S.C. § 32(c)(3), we need not decide whether Stafos should be denied discharge under 11 U.S.C. § 32(c)(1).
 

 [3]
 

 . To support the contention he did not know of the 1967 financial statement, Stafos also relies upon
 
 Wolfe v. Tri-State Insurance Co.,
 
 407 F.2d 16 (10th Cir. 1969), a case in which the bank
 
 *1347
 
 rupts were deemed unaware of a false financial statement under 11 U.S.C. § 32(c)(3). The court in
 
 Wolfe
 
 found that the bankrupts justifiably relied upon the statement their C.P.A. prepared and thus granted them discharge in bankruptcy.
 

 The instant case differs from
 
 Wolfe.
 
 In
 
 Wolfe
 
 the one financial statement made by the C.P.A. was
 
 certified
 
 by the C.P.A. and evidence indicated: (1) bankrupts were uneducated and unsophisticated, (2) they testified they gave no instruction to the C.P.A. other than to prepare a correct financial statement, (3) they relied upon the C.P.A., and (4) the C.P.A. gave the statement to the bank without instruction on the part of the bankrupts. In the instant case, neither Stafos nor the C.P.A. testified at trial. Stafos’ C.P.A. prepared one financial statement for tax purposes
 
 which Stafos certified
 
 and a materially different financial statement for credit rating purposes, unaudited. A permissible inference from these circumstances and the other evidence discussed above is that Stafos knew of the materially false financial statement and that it was prepared at his request.
 
 See In re Gerald A. Mascolo,
 
 505 F.2d 274, 276-77 (1st Cir. 1974).