**In re Ronald William COYNE and Susan Jimmie Coyne, Debtors.**

**Dan LOYD, Plaintiff,**

**v.**

**Ronald William COYNE, Susan Jimmie Coyne and Gerald A. Rimmel, Trustee, Defendants.**

**Adv. No. 86–0271–BKC–JJB.**

**Bankruptcy No. 86–01001–BKC–JJB.**

United States Bankruptcy Court, E.D. Missouri, E.D.

March 3, 1987.

Rollin J. Moerschel, Daniel G. Pelikan, St. Charles, Mo., for plaintiff.

Ann F. Snitzer, Wentzville, Mo., for debtors/defendants.

Gerald A. Rimmel, III, Clayton, Mo., interim trustee.

## OPINION

JAMES J. BARTA, Bankruptcy Judge.

This matter is before the Court on the Creditor's complaint to determine dischargeability of a debt based upon an allegedly false financial statement. The issues were tried to the Court on March 2, 1987 and the matter was taken as submitted upon the record as a whole.

The parties had become acquainted with each other in 1982 when Mr. Loyd (Plaintiff) and Mr. Coyne (Co-Debtor/Defendant) were coaching a girls' softball team. As a result of this relationship, the parties later agreed that the Defendant could place certain coin-operated games at the Plaintiff's business location (a Velvet Freeze ice cream store). In January or February, 1984, the parties began discussing the sale of Plaintiff's ice cream store to the Defendant. The Plaintiff testified that on at least two occasions during early 1984, Ronald Coyne told him that the house in which he and his wife resided had been willed to him by his grandmother, and that he did not want to obtain financing for the purchase of the business by borrowing against the home. However, Mr. Coyne testified he had never told the Plaintiff that he owned his home; but that he had explained that the property had been willed by his grandfather to his family. He stated further that he and the Plaintiff had discussed financing the business purchase by placing a second deed of trust against his home, but that the Defendant was referring to the house he lived in and not a house he owned. The Defendant also testified that he had told the Plaintiff that his (Defendant's) father had refused to allow the house to be used as collateral for the loan.

In mid-March, 1984, Mr. Coyne and Mr. Loyd met at the office of the lessor of the Plaintiff's business premises to discuss the terms of a lease if the Defendant's purchase of the business was accomplished. The Plaintiff stated that the Defendant handed him a copy of a financial statement (Plaintiff's Exhibit "E") which is the basis of this adversary proceeding. He stated further that a photocopy of this statement was also given to the lessor's representative. Relying in part on the information

from the financial statement, the Plaintiff later agreed to sell the Velvet Freeze and accept a $15,000.00 note from the Defendant as part of the sale price. The financial statement is dated March 2, 1984, and the note is dated May 30, 1984.

The Defendant testified that he had in fact prepared the financial statement which is Exhibit "E", but did not intend to give it to the Plaintiff. He stated that he had laid several copies of the statement on a table during the meeting at the lessor's office with the intention of influencing the lessor to agree to lease the premises on terms which were more favorable to the Defendant. He denied handing the document to the Plaintiff.

The financing statement reflects that on March 2, 1984, the joint Debtors claimed a net worth of $193,000.00. The largest single asset listed is "real estate.... $125,-000.00." The Debtor and his co-Debtor spouse testified that they did not own real estate on March 2, 1984 and do not and have not owned the real estate in which they reside. In response to direct examination by Plaintiff's counsel, Mr. Coyne testified that he believed that because the property had been willed to his family, and because he and his wife resided there rent-free, the home was his asset and consequently he listed it on the financial statement in the "assets" column.

Other evidence at the trial disclosed that Ronald Coyne had prepared and delivered other copies of the financial statement to the United States Small Business Administration. These documents, however, do not include a reference to any real estate asset claimed by the Debtors. Mr. Coyne explained that he had photocopied the original signed financial statement and had made several revisions before a final draft was delivered to a bank in connection with the Small Business Administration loan.

The Defendants' statement concerning their financial condition (Exhibit "E") is clearly false. The Debtors did not enjoy a real estate asset valued at $125,000.00 on March 2, 1984 or at any time during the period surrounding the purchase of the Plaintiff's business. The false statement is material in that it caused the Defendants' purported net worth to be greatly inflated at a time when the Defendants were attempting to obtain purchase money financing. Ronald Coyne caused the false statement to be published by introducing it into a series of discussions which were attended by the Plaintiff, and which were directly related to the sale of Plaintiff's business.

The fact that the Plaintiff did not request the preparation of the financial statement does not, in these circumstances, preclude a determination of non-dischargeability. If the other requirements of Section 523 have been established, the debt will not be discharged even though the creditor may have learned of the false financial statement indirectly. *Bell v. Stafos*, 666 F.2d 1343 (10th Cir., 1981); *In re Solari Furs*, 263 F.Supp. 658, 665 (E.D.Mo., 1967).

The record has established that the Plaintiff reasonably relied on the false statement and was thereby injured. As between these parties, the Plaintiff appears to be the less sophisticated in matters of finance and credit. His regular employment is as a manufacturer's representative dealing in hardware items. Mr. Coyne, on the other hand, held a real estate broker's license from 1985 (after the sale of Plaintiff's business) until about February, 1987 when it expired and was not renewed. He testified that he was familiar with the concept of ownership of real property. It was not unreasonable for the Plaintiff to rely on the Defendants' written false financial statement which was supported by parole factors including the previous statements by Ronald Coyne, and the Plaintiff's observations of the Defendant cuttinggrass and other activities which may be interpreted as incidents of ownership.

These same circumstances when considered with the record as a whole, support the conclusion that Ronald Coyne acted with the intent to deceive the Plaintiff when he caused the publication of the false financial statement. In the circumstances presented in this matter, the Court must conclude that the more credible testimony at this hearing was that presented by the Plaintiff. The physical evidence supports the Plaintiff's recollection of the facts and

presents a situation which is inconsistent with the Bankruptcy Code concept of dischargeability. Therefore, as to Ronald Coyne, the debt owed to this Plaintiff is not dischargeable as having been obtained by use of a false financial statement.

Although the note and financial statements in this matter contain the signature of Susan Coyne, the evidence at trial established that she signed only the original note and Standby Agreement. Both Defendants testified that Ronald Coyne had signed his wife's name to the financial statements without her knowledge or permission. In the circumstances presented in this case, there is not sufficient evidence of her participation in the preparation of the false statement, or of an overall benefit to her as a result of the false statement, such that her obligation may be determined to be not dischargeable. The Plaintiff's complaint as to Mrs. Coyne is, therefore, denied.

The uncontroverted evidence at trial has proven that the amount owed at bankruptcy was $17,225.00. A judgment in that amount is also being entered consistent with this Opinion.