In re James M. SMITH, Debtor.

James M. Smith, Appellant,

v.

Sidney Lachter and Sandra Lachter, Successors to Neepawa Enterprises, Ltd, Appellees.

BAP No. AZ–98–1883–ABK.
Bankruptcy No. 95–06077–PHX–RTB.
Adversary No. 96–752.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 23, 1999.

Decided Dec. 9, 1999.

Ronald J. Ellett, Ronald J. Ellett & Associates, Phoenix, AZ, for James M. Smith.

Lawrence D. Hirsch, Phoenix, AZ, for Sidney and Sandra Lachter.

Before: ALLEY[1], BRANDT, and KLEIN, Bankruptcy Judges.

## OPINION

FRANK R. ALLEY, III, Bankruptcy Judge.

Plaintiffs Sidney and Sandra Lachter filed a complaint objecting to the discharge of their claim pursuant to Code § 523(a)(2)[2]. The claim had previously been reduced to judgment in a proceeding in the Arizona Superior Court. The Bankruptcy Court entered judgment declaring the debt to be excepted from discharge, and imposed a money judgment for the amount owed. Because we find the Court's authority to be limited to determining the dischargeability of the debt, we **VACATE** the money judgment, but **AFFIRM** the determination of nondischargeability.

## I. BACKGROUND

The parties summarized the pertinent uncontested facts in their Joint Pre–Trial Statement:

1) In 1982, the Defendant, acting on behalf of a corporation, You–Ni–Que Designs, entered into negotiations with Plaintiff Sidney Lachter, acting on Plaintiffs' behalf and on behalf of Neepawa Enter-

---

1. Hon. Frank R. Alley, III, Bankruptcy Judge for the District of Oregon, sitting by designation.

2. Unless otherwise indicated, all references to "Code", "chapter" "Section" or "§" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

prises, Ltd., for the purchase of Plaintiffs' business.

2) During the negotiations, the Plaintiff never requested financial statements from the Defendant.

3) The sale of Plaintiffs' business to You–Ni–Que was completed on 1/4/83 for a purchase price of $200,000 subject to adjustments and offsets.

4) At the time of the sale, Defendant personally guaranteed the obligations owing to Neepawa.

5) You–Ni–Que ultimately failed and breached its obligations to Neepawa. Neepawa was not paid the money owing to it by You–Ni–Que and by the Defendant.

6) Neepawa filed suit against You–Ni–Que and Defendant for breach of the purchase agreement, promissory notes and the guarantee.

7) On 4/24/87, by stipulation, a judgment in the principal amount of $115,000 was entered against You–Ni–Que and the Defendant. The judgment was renewed in 1992 and in May 1995.

8) In 1998, Neepawa was dissolved and its rights as a judgment creditor assigned to the Plaintiffs.

At trial the Plaintiff testified that he was approached by a business broker to see if he would be interested in selling his business to an unnamed purchaser. He said he would discuss the possibility and was put in contact with the Defendant. In discussions with the Defendant, Plaintiff asked the Defendant whether he had a financial statement and the Defendant replied that he was having one prepared for the landlords. The Plaintiff attended a separate meeting with each landlord, one with Clive Jordan and one with Jim Lake. At those meetings, the Defendant brought his financial statement with him and presented it to the landlords' representatives. Both the Defendant and the landlord's manager each had a copy. The Plaintiff testified that he sat through the meetings at which the Defendant and the respective manager discussed the financial statement, and that he was able to observe the document. The financial statement matched what the Defendant had earlier told the Plaintiff concerning his net worth. He further testified that the Defendant's oral and written indications of financial worth were very important in his decision to sell the business because of the small $15,000 downpayment and the Defendant's personal guarantee of the obligation.

The Defendant testified that no meetings took place with the landlords' managers and the Plaintiff at which the Defendant's financial statement was discussed. The Defendant and Plaintiff reached an oral agreement to sell the business in June, 1982, but the actual sale did not occur until 1983. There was also testimony regarding two versions of the financial statement, in which the net worth amount of $585,730 and "total liabilities net worth" of $703,730 were switched. In a colloquy with the Judge, the Defendant's attorney stated that he introduced that information to try to show that the Plaintiff had not really seen the financial statement. The court characterized the evidence as insignificant.

Mr. Lake, one of the landlord's managers testified at trial that he recalled meeting with the Defendant and discussing his financial statements, but that he did not recall whether anyone else was present at the meeting. He recalled meeting with both the Plaintiff and Defendant to discuss other matters, but did not recall whether the financial statement was discussed.

At a supplemental hearing held on February 26, 1998, Mr. Lake testified that he was certain that no one else was present at the meeting when the Defendant presented his financial statements to him. It was not his practice to discuss a prospective tenant's financial statements with a third party present and he would not do so. He further testified that there were multiple meetings at which the financial statements were discussed. And there were several

meetings at which both the Defendant and the Plaintiff were present.

After trial the Court found that the Plaintiff was present when the financial statements were provided to the landlord's agent and observed the information on the financial statements. The court also ruled that the financial statement need not be presented to the creditor or the creditor's representative to satisfy § 523(a)(2)(B), but it is sufficient if the creditor learns of the false statement indirectly, as long as there is reliance on it. The court found all the elements of § 523(a)(2)(B) present and ordered counsel for Plaintiffs to submit a form of judgment.

## II. PROCEDURAL HISTORY

The Defendant filed his petition for relief under Chapter 13 of the Bankruptcy Code on July 13, 1995. The Chapter 13 proceeding was converted to one under Chapter 7 on July 16, 1996. On September 27, 1996, the Plaintiffs filed an adversary proceeding seeking to have their claim against the Debtor declared nondischargeable under 11 U.S.C. § 523(a)(2)(B). The claim was based on a state-court judgment obtained on April 24, 1987.

Trial was held on September 24, 1997 and the matter taken under advisement. On October 24, 1997, the court issued a minute entry/order declaring the debt to be nondischargeable. Thereafter the Court issued an "Order Regarding Non–Dischargeability of Debt" directing that a judgment be entered in favor of Plaintiffs.

Defendant filed a motion for reconsideration[3], alleging that the court was misled by an inaccurate transcript to believe a witness, Jim Lake, was uncertain whether the Plaintiff was at a meeting when he was in fact certain that the Plaintiff was not at the meeting. A hearing was held on February 26, 1998 to take additional testimony from Mr. Lake. On April 26, the court

entered its minute entry/order denying Defendant's motion.

On January 8, 1998, the Defendant filed a "Supplemental Motion Regarding Additional Grounds in Support of Reconsideration of Order" (i.e., the original order granting judgment to Plaintiffs). In that motion, the Defendant advanced as grounds for reconsideration the fact that Plaintiffs had failed to renew their state-court judgment, causing it to lapse. On April 29, the court entered its minute entry/order stating that the Plaintiffs had been barred from renewing their state-court judgment by 11 U.S.C. §§ 362 and 524. The court stated it would not decide whether the state-court judgment was still valid and that the Plaintiffs' right to a determination of nondischargeability of their debt was not dependent on the validity of the state-court judgment.

The Plaintiffs thereupon submitted a form of judgment to the court which provided that the Plaintiffs' debt was nondischargeable and for a monetary judgment in favor of the Plaintiffs in the amount of $223,747.92 with 10% post-judgment interest. The Defendant filed an objection to the form of judgment on the grounds that the court only ruled that the debt was nondischargeable and that a monetary judgment had not been sought by Plaintiffs nor considered by the court. The court, citing *In re Kennedy*, 108 F.3d 1015 (9th Cir.1997), stated in its minute entry/order that the Ninth Circuit has held that the court has jurisdiction to enter a money judgment in conjunction with a finding that a debt is non-dischargeable. The court then stated that the only issue to be decided is the amount of the money judgment. He ordered the Plaintiff to submit an updated form of judgment to the court with a copy to opposing counsel, with opposing counsel having 10 days to

---

**3.** Because of the ambiguity flowing from the use of the term "motion for reconsideration" it has been characterized by one court as a "motion asking for trouble." *Carter v. U.S.*

*National Bank of Oregon*, 304 Or. 538, 546, 747 P.2d 980, 984 (1987) (Peterson, C.J. concurring).

object only to the amount of the monetary judgment.

On November 12, Defendant filed yet another motion for reconsideration, reiterating his objection to the form of judgment, and arguing that: (1) *Kennedy* is inapposite because, in that case, the underlying state action had never been reduced to judgment, (2) that a second judgment would violate the doctrine of *res judicata*, and (3) that a second judgment on the underlying cause of action could not be entered because the statute of limitations on the underlying cause of action had long since lapsed. The court responded with a minute entry/order denying Defendant's motion for reconsideration, stating that the Defendant's position was without merit.

On November 24, 1998, the court's judgment was entered finding the Plaintiffs' debt to be nondischargeable and granting a monetary judgment to Plaintiffs in the amount of $230,708.33 with 10% post-judgment interest.[4]

On December 4, 1998, Defendant filed his Notice of Appeal of the judgment entered on 11/24/98, the minute entry/order entered 11/24/98, and of all earlier orders entered in the proceeding.[5]

### III. ISSUES

1. Whether the Plaintiffs established reasonable reliance as required by 11 U.S.C. § 523(a)(2)(B)(iii).

2. Whether the court erred in holding that the Defendant's financial statement had been made or published with the intent to deceive as required by 11 U.S.C. § 523(a)(2)(B)(iv).

3. Whether the Bankruptcy Court erred in including a money judgment in the nondischargeability judgment, under the doctrine of res judicata or violation of due process.

### IV. STANDARD OF REVIEW

■ A court's findings of fact are reviewed under the clearly- erroneous standard and its conclusions of law are subject to de novo review. *In re Park–Helena Corp.*, 63 F.3d 877, 880 (9th Cir.1995) (citing *In re United States Trustee*, 32 F.3d 1370, 1372 (9th Cir.1994)).

■ The Bankruptcy Court's interpretation of the Bankruptcy Code is reviewed de novo. *In re Vylene Enterprises, Inc.*, 90 F.3d 1472, 1475 (9th Cir.1996). Whether a claim is nondischargeable is reviewed for gross abuse of discretion. *In re Sternberg*, 85 F.3d 1400, 1404–05 (9th Cir.1996). The "gross abuse" standard is the same as reviewing the findings of fact for clear error and reviewing conclusions of law de novo. *In re Roosevelt*, 87 F.3d 311, 314 n. 2 (9th Cir.1996), *amended*, 98 F.3d 1169 (9th Cir.1996), *cert. denied*, 520 U.S. 1209, 117 S.Ct. 1691, 137 L.Ed.2d 818 (1997). "[W]hether there was reasonable reliance, and whether there was intent to deceive are issues of fact." *Candland v. Insurance Co. of North America (In re Candland)*, 90 F.3d 1466 (9th Cir.1996) (citing *In re Lansford*, 822 F.2d 902, 904 (9th Cir.1987)).

■ "Review under the clearly erroneous standard is significantly deferential, requiring a 'definite and firm conviction

4. The judgment states that "Plaintiffs shall have judgment against Defendant in the amount of $230,708.33, to accrue interest at the rate of 10% per annum. Attached hereto and incorporated herein by this reference is Exhibit "A" which sets forth the civil [i.e., state court] judgment date, the judgment amount, interest calculations, interest payments, balance owing as of November 24, 1998, and the daily rate of interest." The principal amount of the judgment is the unpaid principal of the state court judgment, plus accrued but unpaid interest at the state court judgment's rate of 10% per annum. The Exhibit notes that interest accrues after November 24, 1998 at $31.51 per day. This is the *per diem* accruing on $115,000.00, which is the unpaid principal balance of the state court judgment.

5. Since the Notice of Appeal was timely only as to the November 24 order and judgment, our review is limited to those acts. Fed. R.Bankr.P. 8002.

that a mistake has been committed.'" *Concrete Pipe and Prod. v. Construction Laborers Pension Trust,* 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). Thus, an appellate court must accept the lower court's findings of fact unless upon review the appellate court is left with the definite and firm conviction that a mistake has been committed. *Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 819 (9th Cir.1996). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Phoenix Eng'g and Supply, Inc. v. Universal Electric Co.,* 104 F.3d 1137, 1141 (9th Cir.1997) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Duckett v. Godinez,* 109 F.3d 533, 535 (9th Cir.1997), *cert. denied,* 522 U.S. 848, 118 S.Ct. 135, 139 L.Ed.2d 84 (1997).

## V. DISCUSSION

### A. *Nondischargeability*

§ 523(a)(2)(B) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

...

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

■ A party seeking to deny discharge of a debt under this section must establish each of the following elements by a preponderance of the evidence:

(1) a representation of fact by the debtor,

(2) that was material,

(3) that the debtor knew at the time to be false,

(4) that the debtor made with the intention of deceiving the creditor,

(5) upon which the creditor relied,

(6) that the creditor's reliance was reasonable, and

(7) that damage proximately resulted from the representation.

*In re Candland,* 90 F.3d 1466, 1469 (9th Cir.1996), *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (burden of proof is by preponderance of the evidence).

Elements 1–3 and 7 were stipulated to by the Defendant prior to trial. The issues contested at trial, and on appeal, are whether the debtor intended to deceive the plaintiff, whether the plaintiff relied on debtor's representations, and whether such reliance was reasonable.

1. *Statement Made With Intent to Deceive Creditor*

■ As a preliminary matter, Plaintiffs argue that Defendant conceded at trial that the financial statement had been published with intent to deceive, and were thereby barred from raising the question on appeal. They point to remarks by counsel in opening argument.[6] At the con-

---

**6.** [Defendant's counsel]: "[T]here is no issue about the accuracy of the financial statements. We do not contend the issue and there's no reason to go into it. It makes no

difference for 523 whether you want to characterize them as grossly inaccurate or simply inaccurate. They're inaccurate. We concede the point. [Plaintiffs' counsel] wants to divert

clusion of trial, the judge stated that in order to find for Plaintiffs, he would have to find that they had proven that Debtor caused the financial statement to be made or published with intent to deceive and that they had reasonably relied on those statements. Plaintiffs' counsel was allowed to argue the legal basis for a finding under § 523(a)(2)(B)(iv) and both parties were allowed to file supplemental briefs on the issue. Because the issue was fully litigated by both parties and the court decided the issue on the merits, Appellant is not precluded from challenging the court's decision on appeal.

■ The Defendant does not dispute that he prepared the materially false financial statement with the intent to deceive the landlords' representatives. Because the Plaintiff never asked for a copy of the financial statement and one was never provided to him, however, the Defendant disputes that the statement was "made or published" with the intent to deceive the Plaintiffs. Plaintiffs cite to cases that either discuss or hold that a creditor may rely on a financial statement which he received from a third party, *In re Bui,* 188 B.R. 274 (Bankr.N.D.Cal.1995) and *In re O'Connor,* 145 B.R. 883 (Bankr.W.D.Mich. 1982). Those cases, however, talk about reliance by a creditor on financial statements submitted to a credit agency—something not present in this situation. In a third case, *In re Coyne,* 70 B.R. 560 (Bankr.E.D.Mo.1987), the creditor and the debtor met at the office of a lessor. The debtor brought copies of his materially false financial statement to the meeting which he testified he prepared to influence the lessor to agree to lease the premises. The creditor stated that the debtor handed a copy of the statement to him at the meeting, while the debtor stated he only laid them out on the desk. The court held that the fact that the creditor did not

request preparation of the financial statement did not in those circumstances preclude a determination of nondischargeability. It was sufficient that the creditor learned of the false financial statement indirectly. *Id.* at 561. The court held that the physical evidence supported the plaintiff's recollection of the facts. *Id.*

Whether the false financial statement was made with the specific intention of deceiving the Plaintiff, or whether it is sufficient that the statement was prepared for another purpose and learned of and relied on by the Plaintiff in the course of negotiations is not relevant in the present circumstances.

In its ruling, the court held that the financial statement need not be presented to the creditor, and that it is sufficient if the creditor learns of it indirectly. However, the Plaintiff testified that he asked the Defendant whether he had a financial statement and that the Defendant replied that he would be preparing one for the lessors. If the court believed this testimony, which it appears to have done, it would be a fair inference that the Defendant knew at that time that Plaintiff had an interest in his financial statement and that it was prepared knowing of Plaintiff's interest and with the intent to deceive the Plaintiff, at least in part, especially given the discussions between the Plaintiff and Defendant concerning Defendant's personal finances. It would not be necessary that the Defendant hand a copy of the financial statement to the Plaintiff, so long as the Plaintiff relied on the written financial statement to his detriment.

■ The Defendant argues that even if the Plaintiff's story concerning the meeting at the offices of the lessors' representatives is believed, the "publication" requirement of § 523(a)(2)(B)(iv) was not met.

---

your attention away from the real issue in the case. He also gave you a memorandum dealing with the debtor's intent. Again, that's not the issue in the case.

The only issue in this case is reasonable reliance. We concede the others.... The question is: Did Mr. Lachter reasonably rely on these financial statements?"

The intended meaning of 'published' is illustrated in the Senate Report where it equates the meaning to that in a defamation case, S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978), and in the House Report where it analogizes the meaning to that in slander actions, H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. American Jurisprudence explains, 'Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed'.

*In re O'Connor*, 145 B.R. 883 (Bankr. W.D.Mich.1992) (internal citation omitted). For purposes of § 523, a publication occurs whenever a debtor provides or displays a financial statement under circumstances which make it clearly visible to a possible lender, and discusses the terms of the statement with a third party in the lender's presence, intending to deceive both. It is immaterial whether a copy of the statement was actually handed to the Plaintiff. *In re Maldonado*, 228 B.R. 735 (9th Cir. BAP 1999).

### 2. *Reasonable Reliance*

■ This Panel has noted that, when there is evidence of materially fraudulent statements, little investigation is required for a creditor to have reasonably relied on the representations. *See In re Gosney*, 205 B.R. 418, 421 (9th Cir. BAP 1996), *aff'd* 161 F.3d 12 (9th Cir.1998) (citing *Candland*, 90 F.3d 1466, and *In re Lansford*, 822 F.2d 902, 904 (9th Cir. 1987)). *See also National Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 305 (2d Cir.1996) (citations omitted) (" 'Once it has been established that a debtor has furnished a lender a materially false financial statement, the reasonableness requirement of § 523(a)(2)(B)' ... is 'a low hurdle for the creditor to meet, and is intended as an obstacle only for creditors acting in bad faith.' ").

The reasonable reliance argument is primarily over whether the Plaintiff even saw the financial statement before agreeing to the sale. The Plaintiff said he saw it at the meetings with the lessors, and the Defendant and Mr. Lake said he didn't. Defendant's backup argument is that being a lawyer and businessman, the Plaintiff could not have reasonably relied on a financial statement that was unsigned, did not show the Defendant's full name, contained no Social Security number, and contained mathematical and transcription errors. The Bankruptcy Court found that Plaintiffs were present at a meeting at which the false financial statement was displayed and discussed, and that the Plaintiffs reasonably relied on the statement. As conceded at oral argument, Defendant's position is essentially that the Panel should view the evidence differently. However, the Court's view is plausible and supported by substantial evidence, and it should not be overturned on appeal.

### B. *Money Judgment*

■ Plaintiffs were granted a monetary judgment in the amount of $230,-708.33 with post-judgment interest at 10%. The judgment was calculated by taking the state-court judgment principal amount of $115,000, adding interest at 10% to the date of judgment, and subtracting interest paid by the Defendant on the state-court judgment. Plaintiffs did not seek entry of a separate money judgment in their prayer for relief; they merely asked that the bankruptcy court determine that the "debt due and owing Plaintiffs by Defendant is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)." The only debt referred to by Plaintiffs was the state-court judgment, to which the Defendant stipulated. There was no evidence at trial concerning damages other than the judgment obtained from the state court. In its order denying Defendant's objection to the form of judgment, the court stated that it had the jurisdiction to enter a money judgment in conjunction with a finding of nondischargeability, citing *In re Kennedy*, 108 F.3d 1015 (9th Cir.1997).

This issue arose recently in another case before the Panel, *Gertsch v. Johnson & Johnson Finance Corp. (In re Gertsch)*, 237 B.R. 160 (9th Cir. BAP 1999). In that case, the bankruptcy court had entered summary judgment finding plaintiff's state-court judgment nondischargeable and also provided a separate federal money judgment. The money judgment was calculated much the way that it was calculated in the case under appeal, by taking the amount of the state-court judgment and adding post-judgment interest through the date of the bankruptcy court judgment. The BAP held that "Where the debt at issue has been reduced to judgment, the bankruptcy court's judgment in a nondischargeability action should merely declare the prior judgment nondischargeable (or not) in whole or in part." *Id.* at 172. The Panel remanded for entry of judgment clarifying that it is the state court's money judgment which is nondischargeable.

28 U.S.C. § 157(b)(1) provides that

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Core proceedings are described in the same section, and include proceedings to determine the dischargeability of particular debts. 28 U.S.C. § 157(b)(2)(I). Appellate courts which have considered the question have concluded that entry of a judgment for an unliquidated claim is a necessary part of establishing whether a debt is excepted from discharge, and to what extent. *See In re Kennedy*, 108 F.3d 1015, 1018 (9th Cir.1997), *In re McLaren*, 3 F.3d 958, 965–966 (6th Cir.1993), *In re Hallahan*, 936 F.2d 1496, 1507–1508 (7th Cir.1991), *In re Porges*, 44 F.3d 159, 163–165 (2d Cir.1995).

In *Kennedy* the claim against the debtor/defendant had not been reduced to judgment in state court. The Court of Appeals held that the bankruptcy court acted within its jurisdiction when it entered a money judgment against Kennedy in conjunction with a finding that the debt was excepted from discharge. 108 F.3d at 1018. The Court noted that it was "particularly persuaded" by the analysis in *In re Devitt*, 126 B.R. 212, 215 (Bankr.D.Md. 1991):

If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the non-dischargeable debt.

The essence of the holding in *Kennedy* and similar cases is that entry of a money judgment is a necessary predicate to determination of the extent to which claims must be paid. It follows that a separate judgment is not necessary when the claim has already been reduced to judgment by another court of competent jurisdiction. Since the bankruptcy court's authority to impose the judgment is premised on the need to extend complete relief, it is without authority to do so when the relief is not needed.

▇▇▇ Imposition of a separate federal judgment is precluded by the doctrine of *res judicata*, or claim preclusion.

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the

courts of such ... State from which they are taken'.

*Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir.1995). "Under the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Chaney Building Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986) (internal citation omitted). It is clear that an Arizona state court would not hear the same case after a prior Arizona state court had heard the case and entered a judgment. A federal court is likewise precluded from entering a monetary judgment based on a cause of action fully litigated in an Arizona state court.[7]

As we noted in *Gertsch*, there are also important prudential reasons for declining to enter a separate federal judgment:

> [After entry of the second, federal judgment] the judgment debtor could return to the state court for relief from [the state judgment] for reasons permitted by state law, and the state court could reduce the judgment debt. Were such reasons to exist, the separate federal money judgment, not based on any independent determination, adds nothing but confusion.

*In re Gertsch*, 237 B.R. 160, 171 (9th Cir. BAP 1999).

The case at bar provides a stark illustration of that point: It was suggested to the bankruptcy court that the underlying state court judgment has lapsed, and is no longer enforceable. See A.R.S. § 12–1551(B). The entry of a new, separate federal money judgment is inconsistent with the operation of this statute, to the extent it applies.

The efficacy of Arizona judgments under these circumstances is a matter better left to the Arizona courts, without the added complication of a parallel federal judgment.[8]

## VI. CONCLUSION

The Bankruptcy court did not err in its determination that Plaintiffs' claim against Defendant was excepted from discharge. The Court did, however, err when it entered its own money judgment for the amount claimed. The case is therefore remanded with instructions to amend the bankruptcy court's judgment to eliminate the money judgment.

---

7. We note that the bankruptcy court's judgment takes into account payments made and applied to accrued interest after the state court judgment was entered. However, Defendant never contested calculation of the amount owed when the judgment was lodged. We do not, therefore, address whether a bankruptcy court may enter a money judgment in a discharge case when the amount due under a prior judgment is contested.

8. We express no opinion respecting the Bankruptcy Court's holding that renewal of the Arizona judgment was stayed, nor do we suggest the bankruptcy court lacks jurisdiction to resolve the question of the continued enforceability of that judgment if directly presented in appropriate proceedings.