706 P.2d 732

**NORTH STAR DEVELOPMENT CORPORATION, Defendant/Appellant,**

v.

**Clifford L. WOLFSWINKEL and Eleanor M. Wolfswinkel, husband and wife, Defendants/Appellees.**

**NORTH STAR DEVELOPMENT CORPORATION, Defendant/Appellant,**

v.

**Clifford L. WOLFSWINKEL and Eleanor M. Wolfswinkel, husband and wife, Defendants/Appellees,**

and

**B.B. Bonner, Jr., and Kaide Bonner, husband and wife; and George Nackard and Lenora Nackard, husband and wife, Plaintiffs/Appellees.**

**No. 2 CA–CIV 3985.**

Court of Appeals of Arizona, Division 2, Department B.

March 27, 1985.

Reconsideration Denied May 16, 1985.

Review Denied Sept. 10, 1985.

Shirley A. Dunnells and Porter, Tobler & Martineau, P.C. by J. Stanley Martineau, Mesa, for defendant/appellant.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Leland M. Jones and S. Cary Forrester, Phoenix, for defendants/appellees.

Jerry L. Smith, Flagstaff, for plaintiffs/appellees.

## OPINION

LACAGNINA, Judge.

In order to decide the issues in this case, it is necessary to state the history of legal proceedings involving all the parties to this appeal.

On March 14, 1972, Wolfswinkels brought suit against North Star for specific performance of, and against Bonner and Nackard (B/N) for interference with, a contract concerning the sale of the Tonto Natural Bridge. In a similar suit in Coconino County, B/N brought an action against North Star and Wolfswinkels to quiet title. The two were later consolidated into one cause. On July 25, 1974, the court ordered:

1. Specific performance and attorney's fees for the Wolfswinkels as against North Star.

2. Money damages for Wolfswinkels and North Star for interference with a contract as against B/N.

3. An equitable mortgage in favor of B/N.

4. Attorney's fees to North Star against B/N and reimbursement to North Star for attorney's fees paid to Wolfswinkels.

On September 17, 1974, B/N having filed a notice of appeal, the court fixed the amount of the supersedeas bond at $50,000, and on October 17, 1974, the parties filed a stipulation with the court which included an agreement by Wolfswinkels and North Star not to execute on the judgment until after a mandate from the Arizona Supreme Court had been received by the superior court. B/N agreed to pay mortgage payments on the property, property taxes, and to insure the property, and the parties agreed that so long as B/N complied with the agreement, there would be no execution on the judgment. The Arizona Court of Appeals affirmed (on the issue of waiver of jury trial) in *Nackard v. Wolfswinkel*, 116 Ariz. 348, 569 P.2d 290 (App.1977).

On December 16, 1977, B/N filed suit in Gila County against North Star and Wolfswinkels, among others, claiming defendants had no right or claim to Tonto Natural Bridge or that their claim was subordinate and inferior to B/N's. Both North Star and Wolfswinkels answered and counter-claimed.

This is an appeal by North Star from the Gila County Superior Court's February 26, 1981 order essentially reconfirming the judgment of July 25, 1974. It had been stayed because of a bankruptcy proceeding by North Star. North Star contends that the trial court's order as to Wolfswinkels is precluded because Wolfswinkels did not seek to enforce their 1974 judgment within five years as required by A.R.S. § 12–1551. We disagree.

## I. THE FIVE–YEAR DORMANCY STATUTE IS TOLLED BY THE FILING OF A SUPERSEDEAS BOND WHICH STAYS EXECUTION OF THE JUDGMENT PENDING APPEAL.

■ A.R.S. § 12–1551 allows for enforcement of a judgment within five years after its entry, and beyond that time period it can only be *revived* by requisite affidavit or an action brought thereon within five years from the date of entry. After the five-year period has lapsed, an attempt to *revive* the judgment fails by any argument of equitable estoppel or by any showing of acknowledgment of the barred obligation. *Chudzinski v. Chudzinski*, 26 Ariz.App. 130, 546 P.2d 1139 (1976).

■ However, that period of limitations has been *suspended* where there is a stay of execution in effect, *Harding v. Sutherlin*, 120 Ariz. 193, 584 P.2d 1184 (App. 1978), the reasoning being that the time period during which a party could not legally execute on the judgment would therefore be excluded from the time allowed for that. Id. at 196, 584 P.2d 1184. In *Harding*, the question presented was not one of *revival* beyond the five-year period but rather *suspension* of that limitation period completely until the stay was lifted.

■ Rule 62(d), Rules of Civil Procedure, 16 A.R.S., (abrogated effective January 1, 1978; see now, Rule 7(a), Rules of Civil Appellate Procedure, 17A A.R.S.), permitted an appellant to obtain a stay of execution effective upon filing the court-approved supersedeas bond. The effect of such a bond is to restrain both parties and the lower court from taking affirmative action to enforce the judgment or decree

pending appeal. *Anderson v. Pickrell,* 115 Ariz. 589, 566 P.2d 1335 (1977).

On October 17, 1974, following a hearing and court order, North Star, B/N and Wolfswinkels filed a written stipulation with the Coconino County Superior Court setting the terms of a supersedeas bond and further agreeing not to execute on the judgment "until after the mandate from the Supreme Court of the State of Arizona ha[d] been received by the Clerk of the Superior Court affirming said judgment."

■ Since Wolfswinkels were prohibited contractually from executing on the judgment until September 27, 1977, when the supreme court denied rehearing on the appeal, the dormancy statute is tolled for that three-year time period, *Harding,* supra, which then gave Wolfswinkels until September 1982 to enforce the judgment.[1]

■ On December 15, 1977, B/N filed a complaint in Gila County Superior Court to foreclose their judgment lien obtained in the Coconino County case. When Wolfswinkels answered and counterclaimed on June 30, 1978, they alleged the existence of the judgment, the contract and the escrow instructions and attached copies as exhibits. This pleading renewed the July 25, 1974 judgment thereby once again tolling the dormancy statute. It contained all of the essential allegations of a cross-claim for enforcement of the Coconino judgment even though Wolfswinkels did not label it a cross-claim until the superior court granted their motion to amend on November 14, 1980. The court construed the original pleading as it was intended in order to do substantial justice. *Busy Bee Buffet v. Ferrell,* 82 Ariz. 192, 310 P.2d 817 (1957);

Rule 8(g), Rules of Civil Procedure, 16 A.R.S. Because the pleading properly stated a cross-claim without being labeled as such, the November 14, 1980 amended answer related back to June 30, 1978. It arose out of the same transaction, the proper notice to the parties existed, and Wolfswinkels' failure to designate the pleading as a cross-claim was merely a mistake on their part. North Star had actual notice as a party to the court action and could not have suffered any prejudice by the amendment. *Owen v. Superior Court of the State of Arizona,* 133 Ariz. 75, 649 P.2d 278 (1982); Rule 15(c), Rules of Civil Procedure, 16 A.R.S.

## II. THE TRIAL COURT ACTED WITHIN ITS JURISDICTION IN ORDERING THE INJUNCTION AGAINST NORTH STAR, IN GRANTING WOLFSWINKELS' MOTION FOR SUMMARY JUDGMENT, AND IN ENTERING THE AMENDED JUDGMENT ON FEBRUARY 26, 1981, RELATING TO MATTERS NOT FULLY ADJUDICATED BY THE JANUARY 13, 1981 JUDGMENT.

### A. The Injunction.

■ The language of the November 14, 1980 order was very specific in restraining certain persons associated with North Star from conveying security interests or effecting transfer of the property in any way. Although it was not necessary for the court to be specific in terms in order for the injunction to be valid, *State v. Nettz,* 114 Ariz. 296, 560 P.2d 814 (App.1977), it is evident from the order that the court was protecting the property pending final deci-

---

1. Although it is not necessary for this court to consider, Wolfswinkels make a strong argument that North Star's pleadings and statements in open court, consistent with the obligations and rights arising from the 1974 judgment, constitute an acknowledgment of its obligations under the judgment to convey the Tonto Natural Bridge, thereby tolling the dormancy statute. *Wilson v. Walters,* 66 Cal.App.2d 1, 151 P.2d 685 (1944). Further, North Star consistently stated in its pleadings that it had sold the bridge to Wolfswinkels, that the 1972 contract was still in existence, and that the only obstacle to close of

escrow was the continuing B/N interference with title. Once B/N gave up their claim to title by filing their quitclaim deed in 1979, and once the five-year period had run following the July 1974 judgment, North Star then claimed it was no longer obligated to perform. Wolfswinkels argue that by its own conduct, North Star should be estopped from asserting any limitation, *Waugh v. Lennard,* 69 Ariz. 214, 211 P.2d 806 (1949), in this case a limitation on the enforcement of the judgment. *Beadles v. Smyser,* 209 U.S. 393, 28 S.Ct. 522, 52 L.Ed. 849 (1908).

sion regarding each of the parties' interests. Rule 65(h), Rules of Civil Procedure, 16 A.R.S., which calls for reasons for the issuance and for specific terms, was therefore fully complied with by the court.

## B. The Motions for Summary Judgment.

The court granted Wolfswinkels' motion for summary judgment on November 14, 1980, more than two years after North Star first received notice of Wolfswinkels' allegations. The record on appeal reflects over 600 pages of responsive pleadings and related discovery documents filed by all of the parties in the case. In addition, North Star filed specific responses to this particular motion for summary judgment on two occasions. Following the November 14, 1980 ruling, North Star filed five memoranda seeking reconsideration and was provided two opportunities for oral argument. Although North Star never moved for additional time to respond, the court by allowing memoranda and oral argument was more than generous regarding North Star's defenses.

## C. The First and Second Amended Judgments.

■ On January 13, 1981, the court granted Wolfswinkels' motion for summary judgment for conveyance of the bridge by reason of the 1974 decree of specific performance and made that payable subject to, among other things, the equitable lien in favor of B/N. The court on that date specifically retained jurisdiction for any further instructions regarding the close of the escrow and the question of costs and attorney's fees. The inclusion of Rule 54(b) language in the court's January 13 order expressly finding no just reason for delay and also directing entry of judgment did not necessarily make it a final judgment for the purposes of appeal. *Marshall v. Williams*, 128 Ariz. 511, 627 P.2d 242 (App.1981); *Cook v. Cook*, 26 Ariz.App. 163, 547 P.2d 15 (1976).

■ In addition, Rule 54(b) prohibits the court from terminating the action as to any claims or parties when more than one claim is presented in an action in the absence of a valid express determination that there is no just reason for delay and upon a valid express direction for entry of judgment. It further states that in the absence of such a valid determination and direction, when any decision adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties, the court shall not terminate the action as to any of the claims or parties. The decision is subject to revision at any time before the entry of the final judgment. If the court reserves the power to later modify its decision and does not indicate that it is final, or if a party moves for reconsideration of the court's decision, then it is not treated as final. 10 Wright and Miller, Federal Practice and Procedure § 2656 (1983). Further, such express reservation is within the court's jurisdiction, *Wheeler Machinery v. Mountain States*, 696 F.2d 787 (10th Cir.1983).

■ On February 26, 1981, the court, following a hearing on all pending matters, made a final determination as to (1) the amount of the equitable lien in favor of B/N, (2) the amount of money to be deposited in escrow and (3) the closing date. The court also awarded costs and attorney's fees to Wolfswinkels to be recovered from North Star. The court exercised proper jurisdiction even when it ruled on motions with the same essential claims previously decided by a different judge. It did not lack the power to change its order simply because it had ruled on the question earlier. *Love v. Farmers Insurance Group*, 121 Aria. 71, 588 P.2d 364 (App.1978).

## D. Factual Issues, Attorney's Fees.

■ With regard to the remaining procedural questions, this court finds that summary judgment was proper here because no genuine issues of material fact existed. Any questions as to the real agreement between the parties or to any representations made by the parties concerning the purpose of the 1972 contract are not properly before this court. As to the original contract, it was the basis for the cause of action which resulted in a

judgment entered July 25, 1974, and because of that could not be examined in any action on the judgment. The doctrine of res judicata prevents any such examination. *Miller Rubber Co. v. Peggs*, 60 Ariz. 157, 132 P.2d 439 (App.1942).

Finally, the lower court acted within its discretion in awarding $20,000 in attorney's fees and over $600 in costs to Wolfswinkels. The contract authorized reasonable attorney's fees to "the respective party litigant" if it was necessary to commence legal proceedings with regard to the purchase or sale of the land, and the verified affidavits filed with the court provide a reasonable basis for the award. This court will not substitute its judgment for that of the trial court where such a reasonable basis exists. *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 679 P.2d 529 (1983).

With respect to this appeal, we find as follows:

1. This court affirms the Second Amended Judgment of Gila County dated February 26, 1981, in its entirety and further instructs that escrow shall close on Tonto Natural Bridge within thirty (30) days of the issue of this opinion, or as soon thereafter as any requirements of the escrow agent/title insurer can be met.

2. B/N and Wolfswinkels are awarded costs and attorney's fees.

We have examined other errors raised by North Star and find they are without merit and need not be discussed.

AFFIRMED.

HATHAWAY, P.J., and LIVERMORE, J., concur.