**In re Demetrio VENEGAS, Debtor.**

**No. 00–40957.**

United States Bankruptcy Court, D. Idaho.

Jan. 3, 2001.

Demetrio Venegas, Idaho Falls, ID, pro se.

L.D. Fitzgerald, Pocatello, ID, trustee.

## SUMMARY ORDER RE DEBTORS MOTION TO DETERMINE IF STAY ORDER AND DISCHARGE HAVE BEEN VIOLATED

JIM D. PAPPAS, Chief Judge.

**Background and Facts.**

The Chapter 7 debtor, Demetrio Venegas ("Debtor") moves the Court for an order determining that creditor Kippie Adams ("Creditor") and the Bonneville County Sheriff's Office ("the Sheriff") have violated the automatic stay and the discharge order. Creditor resists on the basis that she was never properly notified of the filing of Debtor's bankruptcy. For the reasons set forth below the Court concludes that Creditor did violate the automatic stay and discharge order, but did not do so willfully. Creditor must return the money she received after Debtor filed for bankruptcy.

Debtor and Creditor's son were involved in an auto accident in June of 1998. At the hearing, Creditor stated that she understood the accident was caused by the negligence of Debtor, and was not the result of an intentional act. Creditor, the owner of the car damaged in the accident, sued Debtor in small claims court and was awarded $3000 in property damages together with $55 court costs.

■ On June 13, 2000, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Docket No. 1. Debtor failed to list the debt owed to Creditor in his schedules.[1] Listed creditors were originally notified that Debtor's case was a "no-asset" case and those creditors were instructed not to file proofs of claim with the Court. Docket No. 4, Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines. A no asset case is one in which it appears from the schedules that the debtor has no non-exempt assets for liquidation under Chapter 7. As usually occurs under these circumstances, shortly after filing, the Chapter 7 trustee filed a report indicating that he had diligently investigated the debtor's financial affairs and had found no property available to sell so creditors may be paid. Docket No. 5, Trustee's Report of No Distribution. Debtor received a discharge of his debts on September 22. Docket No. 6.

Creditor began her attempts to collect the state court judgment before Debtor filed for bankruptcy. On January 31, 2000, she obtained a garnishment order directed to Debtor's employer. The Sheriff served the garnishment on the employer and from March 28 to September 26, a total of $905.85 was deducted from Debtor's wages. Creditor's Exhibit 1, Interim Return of Service from Sheriff's Office.[2] Sometime in early November, Debtor notified the Sheriff that he had filed for bankruptcy and had received a discharge of his debts. The Sheriff discontinued garnishing Debtor's wages. From the evidence submitted to the Court at the hearing, it appears that the last garnishment occurred on September 26. Creditor's Exhibit 1, Interim Return of Service from Sheriff's Office.

1. It appears from the record and representations made at the hearing that Debtor simply failed to tell his attorney of the judgment rendered against him in favor of Creditor.

2. For the purpose of this analysis, it is the timing of the deductions from Debtor's wages that are relevant here, not when the money was paid over from the Sheriff to Creditor. It

Of the $905.85, $388.66 was garnished after Debtor filed for bankruptcy, and of this sum, $368.10 was received by Creditor after the Sheriff's Office deducted $20.56 in fees. Creditor's Exhibit 1, Interim Return of Service from Sheriff's Office. After the discharge order was entered, $23.65 was paid by the Sheriff to Creditor, after deduction of $5.36 for fees.

A hearing on Debtor's motion was held on December 13 at which the parties made representations and submitted evidence to the Court. The Court then took the issues presented at the hearing under advisement.

**Discussion.**

■ It is helpful to consider the facts of this case as falling into two time periods. The first time period began when Debtor filed for bankruptcy on June 13, 2000 and ended when the Court entered the discharge order on September 22. During this first time period, the automatic stay was in effect, which as discussed below prevents creditors from collecting or attempting to collect debts after a debtor files for bankruptcy. The second time period began on September 22, when the discharge order was entered, and continues in effect thereafter. The purpose of the discharge order is to prevent creditors from attempting to collect debts so the debtor may enjoy a fresh financial start.

### June 13 to September 22; Violation of Automatic Stay.

■ During this first period of time, the automatic stay was in effect. The automatic stay prevents creditors from attempting or continuing to collect debts after a debtor has filed for bankruptcy. The Code provides that:

appears from Creditor's Exhibit 1 that the Debtor's employer began deducting sums from Debtor's wages on March 26, with the last deduction occurring on September 26. Payments from the Sheriff to Creditor commenced on May 1 and continued until November 11.

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title....

11 U.S.C. § 362(a).

▆▆▆ As the name implies, the automatic stay arises automatically by statute upon the filing of a bankruptcy petition. *In re Rollins*, 200 B.R. 427, 434 (Bankr. N.D.Ga.1996). The stay is effective against creditors regardless of whether notice of the stay is given to creditors. *Job v. Calder (In re Calder)*, 907 F.2d 953, 956 (10th Cir.1990). Enforcement of a garnishment against the debtor's property after the filing of the bankruptcy petition constitutes an attempt to collect a judgment from the debtor, and amounts to a violation of the automatic stay. *See In re Christensen*, 98.1 I.B.C.R. 15 (Bankr.D.Idaho 1998). Acts in violation of the automatic stay are deemed void and without legal effect. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir.1992).

▆▆▆ Although she was not given proper notice of the filing of Debtor's bankruptcy petition and the automatic stay, the stay was nonetheless effective against Creditor's garnishment. As stated above, a creditor is not required to have knowledge of the automatic stay in order to violate the stay. A violation of the stay occurs whenever a creditor collects, or attempts to collect, a debt after the filing of a bankruptcy case. Garnishing the wages of a bankruptcy debtor is a collection effort. In short, Creditor violated the automatic stay. Because actions that violate the automatic stay are void, Creditor must return the $344.41 she received from Debtor's garnished wages after the filing of the bankruptcy petition.

▆▆▆ However, the fees the Sheriff received for the garnishment should not be returned to Debtor. Although Debtor did provide service of his motion to the Sheriff, that service was insufficient under the Bankruptcy Rules. Fed. R. Bankr.P. 7004(b)(6) provides service by first class mail by be made upon a state or governmental organization thereof "by mailing a copy of the [motion] to the person or office upon whom process is prescribed to be served by the law of the state in which service is made ...." Idaho law requires service upon a state governmental subdivision be made by delivery of the process to "to the chief executive officer or the secretary or clerk thereof ...." I.R.C.P. 4(d)(5). As a governmental subdivision, service to the Sheriff must be made to the chief executive officer. Here, the Certificate of Mailing indicates a copy of the motion was sent to:

Bonneville County Sheriff
605 N Capital
Idaho Falls, ID 83401

Notice was not directed to the Sheriff personally as required by the I.R.C.P., therefore the Court will not direct the Sheriff to return funds to Debtor.

**From and after September 22; Violation of the Discharge Order.**

▆▆▆ The automatic stay remains in effect against actions to collect from the debtor until the case is closed, the case is dismissed, or, in Chapter 7 cases, until a discharge is granted. 11 U.S.C. § 362(c)(2). Here the automatic stay remained in effect until the discharge order (Docket No. 6) was entered on September

22, 2000. The last garnishment on Creditor's judgment occurred on September 26, when the employer withheld $29.01 from Debtor's wages. Of this amount, the Sheriff took $5.36 in fees and paid the remaining $23.65 to Creditor. Adams's Exhibit 1, Interim Return of Service from Sheriff's Office.

■ A bankruptcy discharge voids "any judgment at any time obtained, to the extent that such judgment is a determination of personal liability of the debtor with respect to any debt discharged under section 727." 11 U.S.C. § 524(a)(1). A bankruptcy discharge also "operates as an injunction against the commencement or continuation of an action, employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). As required under Section 524, the Court entered the discharge on September 22. The legal effect of doing so was to discharge all of Debtor's dischargeable debts and to permanently enjoin creditors from attempting to collect discharged debts from him.

Was Creditor's debt discharged even though she was never given notice of the bankruptcy case? Section 727(b) provides "[e]xcept as provided under section 523 of this title, a discharge under (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter...." Section 523 specifies a variety of debt that are not discharged in bankruptcy including those which are:

neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3).

Creditor's judgment debt is of a kind covered by Section 523(a)(3)(A). Section 523(a)(3)(B) is not applicable here. Section 523(a)(2) excepts debts arising from fraud from discharge. Section 523(a)(4) excepts debts arising from fraud in a fiduciary capacity, embezzlement and larceny from discharge. Section 523(a)(6) excepts debts for willful and malicious injury to the debtor or property of the debtor from discharge. Creditor's judgment against Debtor is not of a type covered in paragraphs (2), (4) or (6). As Creditor acknowledged at the hearing, the auto accident was occasioned by Debtor's negligence; it was not the result willful and malicious conduct.

■ As a general rule, under Section 523(a)(3)(A), if the debtor does not list a creditor in the schedules submitted to the court, that creditor's debt is not discharged because the creditor is not notified of the bankruptcy nor given the opportunity to file a proof of claim and receive payment on that claim. As a result of the operation of this provision, creditors holding such debts may then collect from the debtor after the discharge order is entered.

■ However, the Ninth Circuit Court of Appeals has through its decisions created an important exception to this general rule in the case of no asset Chapter 7 cases such as Debtor's case here. *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir.1993). In simple terms, the Ninth Circuit in *Beezley* decided that in no-asset Chapter 7 cases, it makes no difference that debts of the type

described in Section 523(a)(3)(A) are not listed in the schedules or that no notice was given to the creditors holding those debts. The purpose of Section 523(a)(3)(A) is to protect a creditor's right to file a proof of claim and to participate in distributions from the liquidation of the debtors' assets. *Id.* at 1436 (O'Scannlain, C.J. concurring). A creditor must file a proof of claim (or in other words, a written statement a creditor files with the bankruptcy court showing that a debt is owed to the creditor) in order to share in any monies paid out by the liquidating trustee. However, in no-asset Chapter 7 cases, proofs of claim are not filed with the court. Because no assets are available for liquidation, nothing will be paid to creditors. The Federal Rules of Bankruptcy Procedure provide that where it appears no distribution will be made to creditors, the notice sent to creditors may include a statement that it is unnecessary to file proofs of claim because no payment to creditors is expected. Fed. R. Bankr.P. 2002(e). Here, the notice sent to creditors concerning Debtor's case meeting included a statement that creditors should not file proofs of claim with the Court. Docket No. 4, Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines. Because no proofs of claim are filed with the court in no-asset Chapter 7 cases, no deadline is set for proofs of claim to be received. When no bar date is set for proofs of claim, Section 523(a)(3)(A) does not operate to except an omitted debt from discharge because there is never a time when it can be too late to file a timely proof of claim. *Id.* at 1436 (O'Scannlain, C.J. concurring).

The conclusion that must necessarily result from the above analysis is that even though Debtor failure to see that notice of his bankruptcy case was given to Creditor, her judgment debt against him was nonetheless discharged on September 22. Because Creditor's debt was discharged in the bankruptcy, the continuing garnishment of Debtor's wages was a violation of the injunction against actions to collect debts discharged by the discharge order. Therefore, Debtor is entitled to return of the funds garnished from his wages after the discharge order was entered.

Enforcement of the discharge injunction is traditionally done through the court's contempt powers. *See In re Bassett,* 255 B.R. 747, 753–54 (9th Cir. BAP 2000).[3] This Court has inherent authority to enforce the Discharge Order under Section 105(a) of the Bankruptcy Code. Section 105(a) empowers the Court to "issue any order or judgment that is necessary or appropriate to carry out the provisions of the this title." See also *Walls v. Wells Fargo Bank, N.A.,* 255 B.R. 38, 44 (E.D.Cal.2000) ("Congress provided a remedy for violations of the discharge injunction in section 105(a) of the Code."); *Dunmore v. United States (In re Dunmore),* 254 B.R. 761, 763 (Bankr.N.D.Cal.2000) ("Bankruptcy court [sic] have the power, pursuant to § 105(a) of the Code, to en-

---

**3.** How violations of the discharge injunction should be remedied is not entirely clear in this Circuit. At least three cases have authorized a private right of action under Section 524 so that debtors may recover damages directly from creditors for violations of the discharge injunction. *Molloy v. Primus Auto. Fin. Services,* 247 B.R. 804 (C.D.Cal.2000); *Malone v. Norwest Fin. California, Inc.,* 245 B.R. 389 (E.D.Cal.2000); *Rogers v. NationsCredit Fin. Servs., Corp.,* 233 B.R. 98 (N.D.Cal.1999). However, most courts hold there is no private right of action under Section 524, and offer contempt proceedings as the traditional way of addressing violations of discharge orders. *See e.g., In re Bassett,* 255 B.R. 747, 753–54 (reciting numerous cases holding no right of action under Section 524). This Court need not decide whether a private right of action exists under Section 524. Debtor has requested only that the Court find that Creditor and the Sheriff have violated the automatic stay or discharge order and order the return of the funds garnished from his wages. This request does not imply the existence of a private cause of action under Section 524, and an order in the nature of contempt is sufficient to redress the violations found here.

force the discharge injunction."). Under the power granted by Section 105(a), the Court will order the return of the funds garnished from Debtor's wages after the discharge order was entered. Because of the inadequate notice provided to the Sheriff, the Sheriff will not be required to return the funds to the Debtor.

### Motion for Sanctions.

■ Debtor also requests sanctions be entered against Creditor and the Sheriff for violation of the automatic stay and the discharge order. Under 11 U.S.C. § 362(h) an individual injured by a "willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." A willful violation of the stay occurs where "the defendant knew of the automatic stay and ... the defendant's actions which violated the stay were intentional." *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir.1992) quoting *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir.1989).

■ Sanctions are not appropriate here. Creditor was not notified of Debtor's bankruptcy filing and therefore had no knowledge of the automatic stay. Nor are sanctions for violation of the discharge order appropriate since notice of the bankruptcy was not provided to Creditor.

### Conclusion and Order.

Creditor violated the automatic stay and discharge order, albeit inadvertently. Creditor must return the money paid to her through the garnishment after Debtor filed for bankruptcy on June 13, 2000. This totals $368.06 ($344.41 received from wages garnished during the bankruptcy and $23.65 received after entry of the discharge order). Creditor's judgment against Debtor has been discharged, and the discharge order prevents her from taking any further action to enforce the judgment. Creditor may retain the money received prior to Debtor's bankruptcy filing on June 13, 2000.

Accordingly, **IT IS HEREBY OR-DERED THAT** Debtor's motion for return of the money garnished from his wages by Creditor after June 13, 2000 and to stop garnishment of his wages is hereby **GRANTED** as against Creditor Kippie Adams, and said Creditor is hereby ordered to forthwith pay over to Debtor the sum of $368.06. Debtor's motion for return of the money as against the Sheriff and his motion for sanctions are hereby **DENIED**.