**In re James M. SMITH, Debtor.**

**James M. Smith, Appellant,**

v.

**Sidney Lachter; Sandra Lachter, Appellees.**

BAP No. AZ–02–1399–PBRy.

Bankruptcy No. 95–06077–PHX–RTB.

Adversary No. 00–539.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 21, 2003.

Filed April 23, 2003.

Ronald J. Ellett, Ellett Law Offices, P.C., Phoenix, AZ, for James M. Smith.

Lawrence D. Hirsch, Hirsch Law Office, P.C., Scottsdale, AZ, for Sidney Lachter and Sandra Lachter.

Before PERRIS, BRANDT and RYAN, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

The issue in this appeal is whether the bankruptcy court correctly concluded that Sidney and Sandra Lachter ("the Lachters"), holders of a prepetition state court judgment against debtor James M. Smith ("debtor"), timely renewed that judgment within the extended period permitted by § 108(c).[1] The bankruptcy court erred in determining that the Lachters timely renewed the state court judgment under § 108(c)(2). However, they may have timely renewed the judgment under § 108(c)(1). We REVERSE

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

and REMAND for the court to consider this issue.

## FACTS

The Lachters obtained a state court money judgment against debtor in 1987. They timely renewed the judgment by filing a renewal affidavit on March 6, 1992.[2] Under Arizona law, the Lachters had until March 6, 1997 to renew the judgment again.

Debtor filed a chapter 13 petition in July of 1995. His case was later converted to a chapter 7 case. After conversion, the Lachters timely filed a complaint alleging that the debt owed to them as a result of the state court judgment was nondischargeable under § 523(a)(2). Debtor received his discharge on November 12, 1996, before determination of the dischargeability of the debt.

On October 24, 1997, the bankruptcy court announced its decision that the debt owed to the Lachters was nondischargeable. On November 7, 1997, the Lachters filed a renewal affidavit in state court.[3] The bankruptcy court eventually entered a judgment declaring the debt to be excepted from discharge and imposing a separate money judgment. Debtor appealed.

We affirmed the bankruptcy court's determination of nondischargeability, but vacated the money judgment. *See In re Smith,* 242 B.R. 694, 704 (9th Cir. BAP 1999). We concluded that entry of a federal judgment was "precluded by the doctrine of res judicata," because the claim had already been reduced to judgment by a court of competent jurisdiction. *Id.* at 703.[4]

The Lachters filed a Complaint Seeking Declaratory Relief, thereby initiating the adversary proceeding out of which this appeal arises. The Lachters sought a determination that they timely renewed the state court judgment based on the terms of the § 524 discharge injunction and § 108. Both parties filed motions for summary judgment. The bankruptcy court granted the Lachters' motion, concluding that they timely renewed the state court judgment under § 108(c). Debtor timely appealed.

## ISSUE

Whether the bankruptcy court erred in concluding that the Lachters timely renewed the state court judgment.

---

2. A judgment creditor may renew a judgment under Arizona law by filing a renewal affidavit "within ninety days preceding the expiration of five years from the date of entry of" the judgment. Ariz.Rev.Stat. § 12–1612(B). "Additional and successive renewal affidavits ... may be made and filed within ninety days of expiration of five years from the date of the filing of a prior renewal affidavit." Ariz.Rev.Stat. § 12–1612(E).

3. On December 5, 1997, the Lachters filed a Supplement to Affidavit for Renewal of Judgment, attaching the bankruptcy court's signed minute order declaring the debt nondischargeable.

4. Debtor raised the issue of lapse of the state court judgment before the bankruptcy court in a motion for reconsideration of the nondischargeability judgment.

> [T]he court entered [a] minute entry/order stating that the [Lachters] had been barred from renewing their state-court judgment by 11 U.S.C. §§ 362 and 524. The court stated it would not decide whether the state-court judgment was still valid and that the [Lachters'] right to a determination of nondischargeability of their debt was not dependent on the validity of the state-court judgment.

*In re Smith,* 242 B.R. 694, 698 (9th Cir. BAP 1999). We made no determination regarding the bankruptcy court's holding that the Lachters were stayed from renewing the state court judgment or the enforceability of that judgment. *Id.* at n. 8.

## STANDARD OF REVIEW

██ We review the bankruptcy court's order granting summary judgment *de novo*. *In re Giangrasso*, 145 B.R. 319, 321 (9th Cir. BAP 1992). Viewing the evidence in a light most favorable to the nonmoving party, we must determine whether the bankruptcy court correctly found that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *In re De Laurentiis Entm't Group, Inc.*, 963 F.2d 1269, 1271–72 (9th Cir.1992). This appeal presents only legal issues; there is no dispute as to the material facts. Questions regarding the construction of the Bankruptcy Code are also reviewed *de novo*. *In re Munoz*, 287 B.R. 546, 550 (9th Cir. BAP 2002).

## DISCUSSION

A. *Section 108(c) Applies to Determine the Renewal Period for the State Court Judgment.*

Section 108 provides, in relevant part:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ..., and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 722, 1201, or 1301 of this title, as the case may be, with respect to such claim.

██ The bankruptcy court was correct that § 108(c) applies to determine the time period during which the Lachters could renew the state court judgment. Ariz. Rev.Stat. § 12–1551(B) states:

An execution or other process shall not be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or process ... or an action is brought on it within five years from the date of the entry of the judgment or of its renewal.

This statute is an "applicable nonbankruptcy law" that "fixes a period for commencing or continuing a civil action" within the meaning of § 108(c). *See In re Spirtos*, 221 F.3d 1079 (9th Cir.2000)(§ 108(c) defines the post-bankruptcy renewal period for prepetition state court judgments, when the renewal period has not expired as of the petition date).

Debtor contends that § 108(c) applies only if the Lachters were prevented from renewing the state court judgment by the § 362 automatic stay. The parties disagree at great length over whether the automatic stay bars renewal of a prepetition state court judgment. We need not address this issue. The Ninth Circuit decided in *Spirtos* that § 108(c) applies, regardless of whether renewal of the judgment is stayed by § 362. 221 F.3d at 1081. *See also In re Morton*, 866 F.2d 561 (2d Cir.1989)(§ 108(c) extends the time for renewing judgment lien on real property, even if renewal is not barred by automatic stay)(cited with approval in *Spirtos* ).

B. *The Bankruptcy Court Erred In Concluding that the Lachters Timely Renewed the State Court Judgment Under § 108(c)(2).*

██ The bankruptcy court, applying § 108(c)(2), concluded that the Lachters timely renewed the state court judgment, because the time for renewal was "extended to the date that the judgment was

entered determining the Lachters' state court judgment to be nondischargeable." June 25, 2002 Minute Entry/Order at 7. The court observed that the Lachters filed their renewal affidavit "[w]ithin days of that date[.]" *Id.*[5]

One problem with the bankruptcy court's rationale is that it effectively re-writes § 108(c)(2) to add the following italicized words:

> [S]uch period does not expire until the later of—
>
> > (2) "30 days after notice of the termination or expiration of the stay under section 362, 722, 1201, or 1301 of this title, as the case may be, with respect to such claim" *or after determination of the dischargeability of the debt by the bankruptcy court.*

Adding the provision suggested by the bankruptcy court's rationale is inconsistent with the language of the statute.

Another problem is that the bankruptcy court based its decision, at least in part, on a belief that the § 524 discharge injunction prevented the Lachters from renewing the state court judgment until the court determined whether the debt was dischargeable. The bankruptcy court was mistaken as to the application of the discharge injunction.

Section 524 governs the effect of a discharge in bankruptcy and provides, in relevant part, that a discharge

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727
>
> . . .

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor
>
> . . . .

In accordance with these provisions, the discharge order provides that debtor is "released from all dischargeable debts" and that any judgments with respect to dischargeable debts are null and void. Discharge Order, ¶¶ 1,2. The discharge order states that

> creditors *whose debts are discharged by this order* . . . are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts . . . .

(Emphasis supplied.)

■ The legal effect of a discharge order is to discharge only dischargeable debts. *In re Venegas*, 257 B.R. 41, 46 (Bankr.Idaho 2001). It follows that the discharge injunction only applies to debts that are discharged. *Id.* See also *In re Munoz*, 287 B.R. 546, 556 (9th Cir. BAP 2002)("discharge injunction does not, by its straightforward terms, apply to protect the debtor from any debt that is not discharged"). Because the debt owed to the Lachters was not discharged, the discharge injunction did not prevent them from renewing the state court judgment.

> C. *State Law Tolling Period Applies to Determine the Renewal Deadline, Because State Law Establishes a Later Deadline than Bankruptcy Law.*

■ The time for renewing the state court judgment did not expire until the

---

5. The bankruptcy court announced its decision that the debt was nondischargeable in an October 24, 1997 minute order. It entered judgment more than a year later, on November 24, 1998. In concluding that the Lachters' November 7, 1997 renewal affidavit was timely, because it was filed within days of the dischargeability determination, the bankruptcy court must have been referring to entry of its minute order, not entry of the judgment.

later of the applicable state law period (§ 108(c)(1)) or thirty days after the termination of the automatic stay[6] (§ 108(c)(2)). As we explain below, and as was conceded by counsel for both parties at oral argument, the date assigned under state law applies here, because it is the later of the two dates designated in § 108(c).

The renewal deadline under § 108(c)(1) is the date of expiration of the period for renewing the judgment under state law. This includes any "suspension of such period occurring on or after the commencement of the case[.]" § 108(c)(1). Such a suspension may result from either state or federal nonbankruptcy law. 2 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 108.04[2] (15th ed. Rev.2001). *See also Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 297 (5th Cir.1995)(§ 108(c)(1) incorporates suspensions provided for under federal nonbankruptcy or state law); *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir.1993)(The reference to suspensions in § 108(c)(1) "incorporates suspensions of deadlines that are expressly provided in other [nonbankruptcy] federal or state statutes.")(emphasis removed).

■ "[T]he period of limitations in which a judgment must be revived is generally suspended where there is a stay of execution in effect." 46 AM.JUR.2D JUDG-MENTS § 471 (1994). Arizona law follows the general rule. The period of limitation under Ariz.Rev.Stat. § 12–1551 is "suspended where there is a stay of execution in effect[.]" *N. Star Dev. Corp. v. Wolf-swinkel*, 146 Ariz. 406, 706 P.2d 732, 734 (App.1985)(emphasis removed). *See also Groves v. Sorce*, 161 Ariz. 619, 780 P.2d 452, 453 (App.1989)("statute of limitations contained in A.R.S. § 12–1551 is tolled until" the judgment is able to be enforced).

Citing *Goodwin v. Hewlett*, 147 Ariz. 356, 710 P.2d 466 (App.1985), debtor argues that the five-year period under Ariz. Rev.Stat. § 12–1551 "does not constitute a statute of limitations which may be tolled." Opening Brief of Appellant at 11 (emphasis removed). Debtor's reliance on *Goodwin* is misplaced.

■ The court in *Goodwin* merely held that Ariz.Rev.Stat. § 12–501 did not apply to toll the period for renewing a judgment under Ariz.Rev.Stat. § 12–1551. Ariz.Rev. Stat. § 12–501 states as follows:

> When a person against whom there is a cause of action is without the state at the time the cause of action accrues or at any time during which the action might have been maintained, such action may be brought against the person after his return to the state. The time of such person's absence shall not be counted or taken as a part of the time limited by the provisions of *this chapter.*

(Emphasis supplied.) As the court in *Goodwin* pointed out, Ariz.Rev.Stat. § 12–501

> is part of Chapter 5, all of which is devoted to the limitations period for every type of cause of action. The section specifically states that a person's absence from the state is not to be counted in computing time under "the provisions of this chapter" (emphasis supplied). A.R.S. § 12–1551, which prohibits execution on a judgment more than five years after its entry or renewal, is not a part of Chapter 5. It is instead part of Chapter 9 which is entitled "Special Actions and Proceedings to Enforce Claims or Judgments." Thus, by it own words,

---

6. The other bankruptcy stay statutes referenced in § 108(c)(2) are not applicable in this case.

the tolling statute is not applicable to judgments.

710 P.2d at 468. The court's holding in *Goodwin* does not foreclose the possibility that the renewal period provided for in Ariz.Rev.Stat. § 12–1551 may be tolled under other circumstances, such as those presented in this case.[7]

The Lachters were prevented from executing on the state court judgment during the pendency of the § 362 automatic stay. § 362(a)(2). The stay was in effect for 487 days, from the petition date (July 13, 1995) until debtor received his discharge (November 12, 1996). § 362(c)(2)(C).[8] Under § 108(c)(1), the March 6, 1997 renewal deadline is extended by this 487 day period. Therefore, the Lachters had until July 6, 1998 (March 6, 1997 + 487 days) to renew the state court judgment. The July 6, 1998 date designated under § 108(c)(1) controls, because that date is later than the § 108(c)(2) deadline of December 12, 1996 (thirty days after notice of termination of the automatic stay).[9]

### D. Remand is Necessary to Determine Whether the Lachters Timely Filed the Renewal Affidavit as Required by Arizona Law.

It appears from the record and argument that the Lachters filed more than one affidavit of renewal. In the briefing, the parties focused on the affidavit of renewal that the Lachters filed on November 7, 1997, because they thought that § 108(c)(2), not Arizona law, supplied the deadline.

---

7. A minority of courts have concluded that § 108(c)(1) operates alone to stop the running of periods of limitation, without regard to the existence of a nonbankruptcy law providing for such a suspension. *See Hazel v. Van Beek*, 135 Wash.2d 45, 954 P.2d 1301, 1310 (1998)(en banc)(discussing minority approach, but adopting majority position). The Lachters suggest in their opening brief that the Ninth Circuit has decided to follow the minority position, citing *In re Hunters Run Ltd. P'ship*, 875 F.2d 1425 (9th Cir.1989). We disagree. The Ninth Circuit has not directly addressed this question. The issue in *Hunters* was whether § 108(c) applied to extend the period for enforcing a statutory lien. While the court in *Hunters* used the word "tolling" in deciding that § 108(c) did apply, it "did not decide whether ... the time period ceased to run, or simply that a thirty-day grace period existed under the statute if the time period had run." *Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 297 (5th Cir.1995). We adopt the majority position, because that approach best comports with the plain meaning and legislative history of § 108(c), for the reasons discussed in *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir.1993). In adopting the majority position, we note that the Ninth Circuit has cited with approval *Rogers* and *Aslanidis*, both of which follow the majority approach. *See In re Spirtos*, 221 F.3d 1079, 1081 (9th Cir.2000).

8. Section 362(c) states that, with certain exceptions not relevant here,

(1) the stay of an act against property of the estate ... continues until such property is no longer property of the estate; and

(2) the stay of any other act ... continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

There is no argument that the date the stay terminated as to acts against property of the estate is relevant in this case. Section 108(c)(2) references the date of notice of termination of the stay "with respect to" the claim at issue. The Lachters only sought enforcement against debtor, not estate property.

9. The excerpts of record include the November 12, 1996 discharge order, but not the certificate of service for that order. Rule 4004(g) requires that the "clerk shall promptly mail a copy of the final order of discharge to" all creditors. Under Rule 9006(e), service of notice by mail is effective upon mailing. The Lachters do not dispute that they were provided notice of debtor's discharge.

While the Lachters filed this renewal affidavit well in advance of the extended deadline established under § 108(c)(1), Ariz.Rev.Stat. § 12–1612 states that a renewal affidavit may be filed "within ninety days preceding" the expiration of the renewal period. In this case, the ninety day period commenced on April 6, 1998. The Lachters filed their affidavit much earlier than this date, on November 7, 1997.

Section 108(c)(1) expressly incorporates state law. There is nothing in the Bankruptcy Code that conflicts with the requirement that affidavits of renewal be filed within 90 days preceding the expiration of the renewal period. All that is required is a series of simple calculations that take into account the period during which the automatic stay barred enforcement.

There remain, however, both factual and legal questions. There is a legal question regarding the applicability of the 90–day period under Arizona law, where the renewal period has been suspended due to a stay of enforcement. Assuming that the 90–day period continues to apply after such a stay, there is also a question of whether the premature filing of a renewal affidavit before commencement of the 90–day period is nevertheless effective under Arizona law to renew a judgment. These questions were not decided by the bankruptcy court and have not been briefed on appeal.[10] Factually, at argument, the Lachters' attorney mentioned that there is another, later renewal affidavit not focused on by the parties or the bankruptcy court because of the erroneous application of § 108(c)(2). We remand for the bankruptcy court to consider the legal issues and develop the factual record.

10. These appear to be questions of first impression under Arizona law. We do not foreclose the options of remand pursuant to 28 U.S.C. § 1452, abstention under 28 U.S.C.

## CONCLUSION

For the reasons set forth above, we REVERSE the bankruptcy court's determination that the Lachters timely renewed the state court judgment under 108(c)(2), and REMAND for the court to consider whether the Lachters timely renewed the judgment in accordance with § 108(c)(1).

§ 1334 or certification of the questions to the Arizona Supreme Court, as deemed appropriate by the bankruptcy court.