NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-11-1696-MkDKi |
| JAVIER TOVAR, | Bk. No.   LA-10-41664-BR |
| Debtor. | Adv. No.  LA-10-03016-BR |
| JAVIER TOVAR, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| HERITAGE PACIFIC FINANCIAL, LLC, | |
| Appellee. | |

Argued and Submitted On
July 20, 2012 at Pasadena, California

Filed – August 3, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:   Christopher L. Hoglin of the Law Offices of
Christopher L. Hoglin, P.C. for Appellant Javier
Tovar; Brad A. Mokri of the Law Offices of Mokri &
Associates for Appellee Heritage Pacific
Financial, LLC.

Before:  MARKELL, DUNN, and KIRSCHER, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

1

## INTRODUCTION

Appellant-Debtor Javier Tovar ("Tovar") appeals the bankruptcy court's judgment against him with respect to a nondischargeability claim brought by Heritage Pacific Financial, LLC ("HPF") pursuant to Section 523(a)(2)(B).[1]  For the reasons set forth below, we AFFIRM.

## FACTS[2]

Some years prior to filing his bankruptcy petition, on November 15, 2006, Tovar executed a promissory note ("Note") for a secured, cash-out refinance loan ("Refinance Loan") in the amount of $120,000.  The collateral for the Note was a second deed of trust on real property located in Sylmar, California 91342 ("Property").  Both the Note and deed of trust were made in favor of WMC Mortgage Corp. ("WMC").  Tovar signed and submitted a Uniform Residential Loan Application ("Loan Application") for the Refinance Loan.  Tovar subsequently defaulted on some or all

---

[1]Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532; all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037; all "Civil Rule" references are to the Federal Rules of Civil Procedure; and all "Evidence Rule" references are to the Federal Rules of Evidence.

[2]The Excerpts of Record provided by Tovar do not include all the documents listed in his Designation of Record and Statement of Issues to be Presented on Appeal ("Designation of Record"). Accordingly, we exercise our discretion to independently review the docket in Tovar's above referenced adversary proceeding, and documents electronically filed therein through the court's CM/ECF system. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989) (appellate court may take judicial notice of underlying bankruptcy records); Kirton v. Valley Health Sys. (In re Valley Health Sys.), 471 B.R. 555, 558 n.2 (9th Cir. BAP 2012) (same).

of the obligations relating to the Property, and the Property was sold at a non-judicial foreclosure sale.

Tovar filed a voluntary chapter 7 bankruptcy petition on July 30, 2010. On November 5, 2010, HPF initiated the adversary proceeding giving rise to the instant appeal by filing a nondischargeability complaint against Tovar. In its complaint, HPF contended it now owned the Note; sought judgment in the amount of $120,000; and requested a determination that such judgment was nondischargeable within the meaning of Section 523(a)(2)(A) and (a)(2)(B) due to misrepresentations made when the loan was originated.

The bankruptcy court scheduled a bench trial for November 9, 2011. On July 26, 2011, the bankruptcy court entered an Order of Representation of Evidence by Declaration For Court Trial ("Evidence Order"). This order required both parties to submit witness testimony by declaration; conditioned the admission of such declarations on the declarant's presence at trial; and set deadlines to submit the declarations, optional trial briefs and evidentiary objections.[3]

The bankruptcy court next entered a Pre-Trial Order on August 3, 2011, which the parties had jointly submitted to the court. The Pre-Trial Order established certain admitted facts, and provided that only certain issues of law remained to be litigated, including the elements of reasonable reliance and intent to deceive under Section 523(a)(2)(B). The parties also

---

[3]The order further provided that no other declarations or briefs were permitted, and that any oral testimony would be limited to rebuttal testimony or cross-examination.

included a list of the exhibits they intended to introduce, and a list of witnesses they planned to call at trial.

Pursuant to the Evidence Order, Tovar and HPF each submitted declarations; Tovar filed a declaration on his own behalf, and HPF submitted the declaration of Benjamin Ganter ("Ganter"), HPF's Director of Client Relations and a Managing Partner.[4] Ganter's declaration was accompanied by two exhibits: a copy of the Loan Application and a copy of the Note. Both parties filed trial briefs. HPF also filed a supplemental exhibit list on September 7, 2011, then filed an amended exhibit list ("Amended Exhibit List")[5] the next day so as to include a copy of an allonge ("Allonge") to the Note.

In his declaration, Ganter stated that HPF purchased the

---

[4]HPF also submitted the declaration of Mark Schuerman. The admission of that declaration, however, is not presented for review; Schuerman was not present at trial and thus, his declaration was not admitted into evidence.

[5]The Amended Exhibit List consisted of 13 exhibits:

1. Loan Application;
2. Note;
3. Deposition transcript;
4. Borrower's Certification & Authorization ("Certification Form");
5. Deed of Trust;
6. Settlement Statement;
7. Occupancy Statement;
8. Amortization Schedule;
9. Latin Services Letter ("Latin Services Letter");
10. Tovar Landscape Design brochure ("Brochure");
11. Wells Fargo Bank Statements ("Bank Statements");
12. Letter of Employment: To Support Purpose of Refinance ("Letter in Support of Refinance");
13. Allonge.

4

Refinance Loan from RP Financial Services, LLC ("RP Financial"), and that HPF was currently in possession of the Note as a result of that purchase. Ganter further declared that through an independent investigation, HPF discovered a number of material misrepresentations on the Loan Application, including misrepresentations related to Tovar's monthly income, his employment, and his intent to live on the Property.

In its trial brief, HPF asserted that it was the current owner and holder of the Note, and accordingly, could enforce the Note and all claims for relief against Tovar. HPF further asserted that the disputed elements under Section 523(a)(2)(A) and (a)(2)(B) were established by the false statements Tovar made in his Loan Application. These included that the Loan Application listed Tovar's monthly income as $11,000; that he owned Tovar Landscape Design and was self-employed through the company; and that he lived at the Property.

In his trial declaration, Tovar stated that he did not read or understand English, and that a loan officer named Jannet Medina translated and filled out the Loan Application on his behalf, directing him where to sign. He also stated that he had no knowledge as to the various documents that HPF asserted were in his mortgage file.

Tovar's trial brief countered HPF's assertion of standing; he argued that HPF had not shown that it was a "person entitled to enforce" the Note pursuant to various provisions of the California Commercial Code. He further argued that because he was an uneducated man who did not read, write, or speak English, it was impossible for him to ensure the accuracy of the

5

statements made in the Loan Application. Finally, he argued that HPF could not establish the reasonable reliance required by Section 523(a)(2)(B), as only WMC, the original lender, could have relied on Tovar's Loan Application.

Tovar also submitted evidentiary objections to Ganter's declaration, and HPF's Amended Exhibit List. He objected to Ganter's declaration pursuant to Evidence Rules 401, 402, 602 and 701. Tovar also objected to HPF's exhibits pursuant to Evidence Rules 901, 1002, 802, and Civil Rule 37.

At the bench trial, the bankruptcy court heard testimony from both Ganter and Tovar. Ganter testified that HPF purchased the Note from RP Financial at the beginning of 2009, as part of a purchase of a pool of mortgage promissory notes. He stated that at the time of the purchase, HPF was a relatively small company, and he was a key employee; thus, he personally oversaw the transaction relating to the Note. Ganter further testified that HPF began investigating the Refinance Loan when it became aware that Tovar had never actually lived on the Property. He also stated that the Allonge was always attached to the Note (both the Note and Allonge were produced at trial). Finally, Ganter testified that HPF's claim for $120,000 encompassed the amount due under the Note, and did not include attorneys' fees or other costs and expenses incurred in litigating the nondischargeability claims.

On cross examination, Tovar testified that it was his signature that appeared on the Loan Application, the Note, the Certification Form, and the Deed of Trust. He further stated that he never:  lived at the Property; earned monthly income in

the amount of $11,000; had a bank account at Wells Fargo Bank; or owned his own business. Instead, Tovar testified that he purchased the Property for his brother as his brother could not finance a home on his own.

Following cross examination testimony, the bankruptcy court overruled Tovar's evidentiary objections. In doing so, the bankruptcy court stated:

> I'm satisfied that these are the proper documents that were in the file. So, I'm going to overrule the objections. The question of discovery I'm not concerned about that. As far as the allonge it's pretty clear to me. I listened to the testimony. As far as the issue of the transfer that there's no harm on that. So, I'm going to admit the exhibits.

Trial Tr. 48:10-17, Nov. 9, 2011.

Following the conclusion of all testimony, the bankruptcy court ruled in favor of HPF. It found that Tovar's testimony lacked credibility, particularly in light of the other various documents in Tovar's mortgage file, including the Occupancy Statement and Latin Services Letter.[6] The bankruptcy court directed HPF to prepare a proposed judgment, and proposed findings of fact and conclusions of law. After these were filed, the court entered the judgment and findings of fact and conclusions of law on December 21, 2011.

On December 7, 2011, Tovar filed the appeal presently before the Panel.

---

[6]The Latin Services Letter is an undated letter signed by a woman (whose printed name is illegible) on behalf of Latin Services, which states that she had prepared Tovar's individual tax returns since 2004, and that he had been self-employed by Tovar Landscaping Design during the two previous years.

7

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). If the judgment is a final order, then we have jurisdiction under 28 U.S.C. § 158(b).

The only question we see to the finality of the judgment on appeal is that it only refers to the Section 523(a)(2)(B) claim, notwithstanding that the complaint was brought pursuant to both Section 523(a)(2)(A) <u>and</u> Section 523(a)(2)(B).

In response to a clerk's order from this Panel requesting an explanation as to why the judgment was final, Tovar filed a written response in which he asserted that the elements of Section 523(a)(2)(B) essentially encompassed the elements of Section 523(a)(2)(A); and thus, the judgment was final. This, of course, is wrong, as well as unhelpful.

Not relying solely on Tovar, a motions panel considered the matter, and on May 25, 2012, entered an order deeming the judgment to be a final disposition of the adversary proceeding. The motions panel determined that judgment on one of two mutually exclusive claims for relief renders the claim not addressed denied, and that no further action was necessary. <u>See</u> <u>McCrary v. Barrack (In re Barrack)</u>, 217 B.R. 598, 605 (9th Cir. BAP 1998) ("It is well established that [Section 523(a)(2)(A) and 523(a)(2)(B)] are mutually exclusive."). Although we are not bound by determinations made by the motions panel, <u>see</u> <u>Couch v. Telescope Inc.</u>, 611 F.3d 629, 632 (9th Cir. 2010), here, we agree with them, and hold that the judgment is a final order. Therefore, we have jurisdiction over this appeal.

8

**ISSUES**[7]

1.  Whether HPF established its standing as a real party in interest in relation to pursuing its nondischargeability claims against Tovar?

2.  Whether the bankruptcy court erred by overruling Tovar's evidentiary objections with respect to the Allonge?

3.  Whether the bankruptcy court erred by overruling Tovar's evidentiary objections with respect to Ganter's declaration and testimony?

4.  Whether the bankruptcy court erred by finding that Tovar obtained the Refinance Loan through fraud, and that the debt was nondischargeable under Section 523(a)(2)(B)?

**STANDARDS OF REVIEW**

Standing is a legal issue that the Panel reviews de novo. Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011).

The bankruptcy court's evidentiary rulings, such as admission of testimony, are reviewed for abuse of discretion. See Int'l Ass'n of Firefighters v. City of Vallejo (In re City of Vallejo), 408 B.R. 280, 291-92 (9th Cir. BAP 2009). Moreover, an erroneous evidentiary ruling will only be reversed if that error was prejudicial. Id. at 292.

---

[7]In his Designation of Record, Tovar presented 33 enumerated issues for review on appeal. Tovar, however, did not address a majority of these issues in his opening brief. The Panel thus declines to address any issues that Tovar did not fully argue in his brief. See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009)(per curiam)(appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.").

Abuse of discretion is determined under a two-prong inquiry. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). The Panel first determines de novo whether the bankruptcy court applied the correct legal standard. See id. If the bankruptcy court failed to do so, it necessarily abused its discretion. See id. at 1262.

If, however, the bankruptcy court applied the correct legal standard, the inquiry moves to the second prong and the Panel examines whether the bankruptcy court's factual findings were clearly erroneous. See id. at 1262. The bankruptcy court's factual findings are clearly erroneous if they are "illogical, implausible, or without support in inferences that may be drawn from the record." See id. at 1263 (internal quotation marks omitted).

As indicated above, factual issues, such as credibility and the authenticity of documents, are reviewed under the clearly erroneous standard. Rule 8013(a). Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing Hinkson, 585 F.3d at 1261-62 & n.21). Under this standard, when there are two permissible views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous. Palmdale Hills Prop., LLC v. Lehman Commerical Paper, Inc. (In re Palmdale Hills Prop., LLC), 457 B.R. 29, 40 (9th Cir. BAP 2011) (citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985)).

Many of the issues in this case – including whether a creditor reasonably relied on a debtor's written statement, and whether a debtor made that statement with intent to deceive – are factual questions that are reviewed for clear error. Smith

10

v. Lachter (In re Smith), 242 B.R. 694 (9th Cir. BAP 1999); see also Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996).

## DISCUSSION

**I.   HPF Established its Standing as a Real Party in Interest to Pursue its Nondischargeability Claims Against Tovar.**

Tovar challenges whether HPF established its standing as a "real party in interest" pursuant to Civil Rule 17(a)(1).  He contends that HPF never provided proof that it was the current holder of the Note, and thereby, that it was a "person entitled to enforce" the note under California commercial law.

Standing is required in every federal case and determines whether the court may entertain the proceeding.  In re Veal, 450 B.R. at 906.  Standing has both constitutional and prudential dimensions.  See Edwards v. Wells Fargo Bank, N.A. (In re Edwards), 454 B.R. 100, 103 (9th Cir. BAP 2011).  In turn, prudential standing implicates the real party in interest requirement under Civil Rule 17.[8]  In re Veal, 450 B.R. at 907.  A party requesting relief must establish that it is the real party in interest under applicable substantive law.  See id. at 907-08.

In mortgage cases involving a negotiable instrument secured by real property, the substantive law is generally supplied by the Uniform Commercial Code ("UCC"), as adopted or implemented by state law.  See id. at 908-10 (discussing Article 3 and Article 9 of the UCC).  Under this construct, a party may establish its

---

[8]Civil Rule 17 applies in bankruptcy proceedings through Rules 7017 and 9014(c).

11

standing by showing it is the "person entitled to enforce" the promissory note as that phrase is defined by UCC Article 3. See id. When a person is not the original payee identified on the note, the person establishes that it is a "person entitled to enforce" the note by showing it is either a holder[9] of the note, or a nonholder in possession of the note with the rights of a holder.[10] See Cal. Com. Code § 3301.[11]

Negotiation is defined as a "transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." Id. § 3201(a). When the note is payable to an identified person, "negotiation requires transfer of possession of the instrument *and* its endorsement by the holder." See id. § 3201(b) (emphasis added). An endorsement is "a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument . . . ." Id. § 3204(a). Once a note is negotiated, the subsequent party becomes a holder, and thereby, a person entitled to enforce the note. See id. §§ 3201(a); 1201(b)(21); 3301.

It is undisputed here that WMC was the original payee on the

---

[9]See Cal. Com. Code § 1201(b)(21) (defining "holder").

[10]A person may also be a person entitled to enforce if they are not in possession of the negotiable instrument but are entitled to enforce pursuant to Cal. Com. Code §§ 3309 or 3418(d).

[11]Application and analysis under the California Commercial Code is appropriate here given that the situs of the Property is California and pursuant to the governing law provision in the Deed of Trust.

12

Note.  Because HPF was not the original payee, it had to show it was a person entitled to enforce the Note, either as a "holder" of the Note, or a "nonholder" in possession of the Note who has the rights of a holder.  See id. § 3301.

The court found that the evidence established that the Note was properly negotiated by WMC to RP Financial.  The last page of the Note contains a stamp endorsing the Note to RP Financial.  There was no evidence presented that this was made for a purpose other than endorsement.  As such, this constituted a proper endorsement to RP Financial.  See id. § 3204(a).  Ganter testified that HPF took possession of the Note when it purchased the Note from RP Financial, and thus, it is inferred that transfer of possession occurred as RP Financial was not the original holder.  Therefore, the Note was properly negotiated to RP Financial.  See id. § 3201(b).

The inquiry thus moves to whether the Note was properly negotiated or transferred from RP Financial to HPF.  This, in turn, requires examination of the validity of the Allonge, since it is the paper that bears the signature of RP Financial indicating a negotiation to HPF.  Tovar argues that HPF failed to show that the Allonge was affixed to the Note, as it must be to effectuate a valid negotiation.  Cal. Comm. Code § 3204(a) ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.").  He also continues to challenge the effect of the Allonge as it was undated and unrecorded.

Contrary to Tovar's argument, there is nothing in the UCC or the California Commercial Code requiring that an allonge be dated

13

or recorded with the county recorder. Tovar advances no substantive argument or case law to support this proposition. Nor, at least since the 1992 amendments to UCC Article 3, is it relevant that there may be space on a promissory note for additional endorsements. See Comment 1 to UCC § 3-204 ("An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement.").

Here, the Allonge attached to the Amended Exhibit List is a single exhibit titled "Allonge to Promissory Note." The document identifies Tovar, the Property and his loan number. There is language stating "Without Recourse, Pay to the Order of: Heritage Pacific Financial, LLC d/b/a/ Heritage Pacific Financial," followed by the signature of Richard A. Panter, on behalf of RP Financial. If affixed to the Note, this information would be sufficient to constitutes an endorsement from RP Financial to HPF. See Cal. Com. Code § 3204(a).

According to Ganter's testimony at the trial, the Note and Allonge were in HPF's possession since its purchase of the Note, and in fact, were both produced at the trial during Ganter's cross-examination. This infers that transfer of possession occurred as HPF was not the prior holder of the Note.

Even so, in order for RP Financial to have properly negotiated the Note to HPF through the Allonge, the Allonge must have been affixed to the Note. See id. § 3204 ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."). The record before us raises some questions as to this. The Note attached to Ganter's declaration and HPF's Amended Exhibit List

14

contains two faint hole punch marks at the top of the document. The Allonge attached to the Amended Exhibit List, however, does not bear any indication of similar punch hole marks. There are no other visible marks that are consistent between the copies of the Note in the record and the Allonge.

Even slightly more perplexing, the copy of the Allonge that Tovar included in his Excerpts of Record clearly bears visible hole punch marks at the top of the document. This seemingly appears to be consistent with the facial marks on the copy of the Note. Tovar's copy of the Allonge, however, does not contain ECF markings at the top of the document, which indicates that it was not filed on the docket. In fact, Tovar's copy appears to be different than HPF's copy of the Allonge attached to the Amended Exhibit List. It is unclear where Tovar obtained his copy of the Allonge.

While these issues may be debated, it is undisputed that the Allonge was produced and examined by the bankruptcy court at trial. Ganter testified that the Allonge was always affixed to the Note. Tovar's counsel examined the Allonge, and did not address any issues as to inconsistent facial marks between the Note and Allonge; in fact, Tovar's counsel only inquired as to a post-it note that was apparently affixed to the Allonge. Based on the testimony and production of the Note and Allonge at trial, it was reasonable to assume that the Allonge was affixed to the Note. And that finding is implicit in the bankruptcy court's ruling, which is entitled to stand unless clearly erroneous, as it goes to identity or authenticity. See Rule 8013(a). On this record, with various possible inferences, we cannot say the

15

bankruptcy court erred in picking one of the possible scenarios and validating the Allonge. Anderson, 470 U.S. at 574; In re Palmdale Hills Prop., LLC, 457 B.R. at 40.

For the reasons stated above, the bankruptcy court's finding that the Note was properly negotiated from RP Financial to HPF was not clearly erroneous. The bankruptcy court was thereby entitled to treat HPF as the "holder" of the Note, and thus, the "person entitled to enforce" the instrument. See Cal. Com. Code §§ 3201(a); 1201(b)(21); 3301. In turn, this conferred the status of real party in interest on HPF pursuant to In re Veal. Therefore, HPF had standing to pursue its nondischargeability action against Tovar.

**II. The bankruptcy court did not err in overruling Tovar's evidentiary rulings.**

**A.    The Allonge**

Tovar focuses a significant portion of his appeal on the admission of the Allonge into evidence at trial. He contends that the bankruptcy court erred by admitting the Allonge when HPF failed to properly authenticate or satisfy the best evidence rule under the Federal Rules of Evidence. Tovar also contends that the bankruptcy court erred by admitting the Allonge when HPF failed to produce the document pursuant to the Evidence Order, or during the discovery period.

1.    Best Evidence Rule – Evidence Rule 1002

Evidence Rule 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." A copy is admissible to the same extent as an

16

original "unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003.

Tovar argues that HPF failed to prove that the Allonge was affixed to the Note, particularly when the Note was originally executed in 2006; thus, without a "certified copy of the original, in its complete form," the Allonge was inadmissible to show that HPF owned the Note. Appellant's Opening Brief ("Op. Br.") at 12.

The bankruptcy court admitted the Allonge into evidence following Ganter's testimony. Contrary to Tovar's arguments, the Best Evidence Rule does not require that HPF have submitted a certified or dated copy of the Allonge. The Allonge was produced at trial, subject to inspection, and Ganter was available for questioning. Although the bankruptcy court did not explicitly state the basis for doing so, all of the elements were present to allow admission of the Allonge, and Tovar's misplaced and irrelevant best evidence objection was not a bar to admitting the Allonge.

### 2. Authentication – Evidence Rule 901

Evidence Rule 901 provides that a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A witness with knowledge of the item can authenticate it by testifying that the "item is what it is claimed to be." Fed. R. Evid. 901(b)(1). The proponent of the evidence "need make only a prima facie showing of authenticity." See United States v. Iribe, 564 F.3d 1155, 1159 (9th Cir. 2009) (internal citation and quotation marks

17

omitted).

Tovar argues that "unrecorded documents, which are required to be recorded, fail to satisfy the authentication requirements of [Evidence Rule] 901 or the self-authenticating provisions of [Evidence Rule] 902." Op. Br. at 13. Once again, he argues that without a "certified copy of the original, in its complete form," the Allonge was inadmissible to show that HPF owned the Note. Id. at 14.

This is simply not the law. Indeed, under state substantive law related to negotiable instruments, a note's "signature[s are] presumed to be authentic and authorized" without the need for certifications of signatures. Cal. Comm. Code § 3308(a); see also Comment 1 to UCC § 3-308. As previously stated, the bankruptcy court admitted the Allonge into evidence following Ganter's testimony. Ganter testified that the Allonge had always been affixed to the Note. Moreover, he testified that HPF was a relatively small company at the time that it purchased the Note, and he was a key employee; thus, he personally oversaw the transaction relating to the Note. As such, Ganter sufficiently testified that the document was what HPF claimed it was – an allonge to the Note executed by Tovar.

Contrary to Tovar's arguments, Evidence Rule 901 does not require that HPF have submitted a certified or dated copy of the Allonge. Although the bankruptcy court did not explicitly state the basis for doing so, the record supports that the Allonge was properly admitted pursuant to Evidence Rule 901.

18

### 3. Untimely Submission

Tovar next argues that the bankruptcy court erred by admitting the Allonge into evidence when HPF submitted the exhibit one day after the deadline established by the court.

It is unclear from the record whether the bankruptcy court required that the exhibits be filed on the docket, and if so, whether it imposed a deadline to do so. Local Bankruptcy Rule[12] 7016 states that a joint pre-trial order must include an attached list of exhibits that each party intends to offer at trial. See LBR 7016(b)(2)(D) (C.D. Cal). This rule, however, does not require that the parties file their actual exhibits on the docket.[13]

Tovar and HPF each listed their exhibits in the Pre-Trial Order entered by the bankruptcy court on August 3, 2011. It appears that HPF supplemented its exhibit list on September 7, 2011, and then filed its Amended Exhibit List the following day on September 8, 2011. The Evidence Order established deadlines for HPF and Tovar to submit their declarations, optional trial briefs, or optional evidentiary objections to the bankruptcy court in advance of trial. In terms of other evidence, the Evidence Order further provided that "[t]he only additional evidence a party may offer at trial is true rebuttal evidence." EOR, Ex. 9 ¶ 2(e).

---

[12]This is in reference to the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California.

[13]In fact, we observe that Tovar did not file his exhibits on the docket.

Even assuming that the Pre-Trial Order or Evidence Order established some sort of deadline to identify or file exhibits, the bankruptcy court generally has discretion during discovery to admit evidence if there is no prejudice to the other party. Although Tovar argues that the Allonge was submitted past the "deadline," HPF amended its exhibit list just one day after its declarations were due pursuant to the Evidence Order. Given that Tovar still had over one month to submit evidentiary objections, and that Tovar actually did so, it does not appear that he suffered any prejudice. Accordingly, the record supports that the court properly admitted the Allonge despite Tovar's objection based on HPF's purported untimeliness.

### 4. Civil Rule 37

In relevant part, Civil Rule 37(d) provides that a court <u>may</u> issue appropriate sanctions where a party fails to serve its answers, objections, or written responses to interrogatories under Civil Rule 33, or to requests for production under Civil Rule 34. Fed. R. Civ. P. 37(d)(A)(ii).

Tovar argues that the bankruptcy court erred by admitting the Allonge under Civil Rule 37 when HPF failed to produce the Allonge despite Tovar's discovery requests. Admittedly, HPF initiated the nondischargeability action in November 2010; yet, the record reflects that the Allonge was first identified as an exhibit in September 2011, just two months prior to trial. It appears that none of HPF's pleadings or other documents include or refer to the Allonge prior to filing the Amended Exhibit List.

Even so, HPF responded to Tovar's interrogatories and requests for production. This is not a situation where HPF

20

refused to provide any documents prior to trial. See Advisory Committee's Notes to Fed. R. Civ. P. 37(d)(1970) (Civil Rule 37(d) is concerned with "total noncompliance . . . [that] may impose severe inconvenience or hardship on the discovering party and substantially delay the discovery process.") (emphasis added). Tovar still filed his evidentiary objections within the deadline established in the Evidence Order.

Moreover, Tovar initially raised this issue in his evidentiary objections to HPF's exhibits; he did not independently move for sanctions under Civil Rule 37(d), nor move to exclude the Allonge under Civil Rule 37(c). Although HPF should have identified the Allonge as an exhibit sooner than two months prior to trial, the record supports the bankruptcy court's ruling.

In conclusion, the bankruptcy court did not abuse its discretion on its evidentiary rulings as to the Allonge.

**B.** **Ganter's Declaration and Trial Testimony - Evidence Rule 602**

Tovar next argues that the bankruptcy court erred by admitting Ganter's declaration and testimony at trial when Ganter lacked personal knowledge with respect to the Note and its transfer. He asserts that whether the Note was transferred, and the effect of any such transfer, is a conclusion of law that Ganter lacked knowledge to testify as to. Evidence Rule 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Ganter testified at the trial that the Refinance Loan was

21

purchased by HPF in 2009. At that time, HPF consisted of nine or ten employees, and Ganter was then a key employee who was personally involved with HPF's transactions and purchases of secondary mortgages such as the Refinance Loan. The bankruptcy court was well within its discretion in finding that this testimony established sufficient personal knowledge as to HPF's purchase of the Note.

**C.    Relevance of Exhibits – Evidence Rules 401 and 402**

Tovar finally argues that the bankruptcy court erred by admitting HPF's 13 exhibits pursuant to Evidence Rules 401 and 402. He asserts that extrinsic evidence is inadmissible under the Federal Rules of Evidence to determine an action, that HPF failed to cite to any exhibits in its trial brief, and thus, it failed to demonstrate the probative value of the exhibits. He concludes that the bankruptcy court should have excluded all of HPF's exhibits based on the lack of probative value or relevancy.

Tovar, however, did not make these evidentiary objections before the bankruptcy court. Instead, he perfunctorily attempts to advance these arguments for the first time on appeal. To the extent that he lodged such objections against Tovar's declaration and testimony before the bankruptcy court, Tovar does not make any substantive arguments on that issue in his brief. Therefore, the Panel declines to address this issue. See Padgett, 587 F.3d at 986 n.2 (appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.").

22

**III. The bankruptcy court did not err in determining that the Refinance Loan was Nondischargeable Pursuant to 11 U.S.C. § 523(a)(2)(B).**

Lastly, Tovar argues that the bankruptcy court erred by finding that he committed fraud when he applied for and obtained the Refinance Loan, and that this fraud gave rise to a nondischargeable debt within the meaning of Section 523(a)(2)(B).

In relevant part, Section 523(a)(2)(B) provides that a debt is nondischargeable if the debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit" by using a statement in writing-

(I)     that is materially false;
(ii)    respecting the debtor's or an insider's financial condition;
(iii)   on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv)    that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2)(B).

The first two elements were not contested at trial, and are not contested on appeal.  That is, we take as given that the documents at issue were materially false, and were made with respect to Tovar's financial condition.

Tovar maintains that the bankruptcy court erred in finding that HPF satisfied the last two elements of Section 523(a)(2)(B); namely, that Tovar acted with the requisite intent to deceive the original lender, and that HPF satisfied the reasonable reliance requirement.  These arguments are addressed in reverse order.

**A.     Reasonable Reliance**

For the purposes of Section 523(a)(2)(B)(iii), a creditor/ assignee is not required to independently establish its own

23

reasonable reliance. See New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 141-44 (9th Cir. BAP 2007), aff'd, 564 F.3d 1088 (9th Cir. 2009). Rather, the creditor need only establish reasonable reliance by the original lender who extended credit to the debtor. See id. at 145-46. Accordingly, the only party's reliance at issue here is that of WMC, the original lender.

Tovar first argues that information as to WMC's lending practices was necessary to determine whether WMC relied on the Loan Application. He contends that despite his discovery requests for this information, HPF failed to produce any of this information, including whether WMC adhered to those practices on Tovar's application. HPF counters that the Loan Application is in and of itself sufficient to establish WMC's reasonable reliance, as it represented Tovar's financial and employment information when WMC approved and disbursed the Refinance Loan.

"Reasonable reliance" is not defined by the Code, but is analyzed under a "prudent person" test, which "courts can apply without additional help." Cashco Fin. Servs., Inc. v. McGee (In re McGee), 359 B.R. 764, 774 (9th Cir. BAP 2006) (internal citations omitted). While a creditor cannot claim reliance on representations that are obviously false, "minor clues of falsity in financial statements that on the whole have the appearance of being very complete and reliable . . ." do not negate reasonable reliance. Gosney v. Law (In re Gosney), 205 B.R. 418, 421 (9th Cir. BAP 1996); Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 170 (9th Cir. BAP 1999). "[W]hen there is evidence of materially fraudulent statements, little

24

investigation is required for a creditor to have reasonably relied on the representations." In re Gertsch, 237 B.R. at 170 (citing In re Gosney, 205 B.R. at 421). This determination is made on a case-by-case basis, based on the totality of the circumstances. In re McGee, 359 B.R. at 774.

Here, in rendering its decision, the bankruptcy court did not explicitly state its findings as to reasonable reliance. During Tovar's closing argument at trial, however, the bankruptcy court referred to various loan documents with respect to the element of reliance. Specifically, Tovar's counsel stated:

> WMC's standard of reliance would have been to verify the information that was being provided on the stated income loan. There's been no evidence produced showing that WMC took any of those steps to confirm the information.

To which the bankruptcy court responded:

> What about the additional documents that were done about three weeks later? They're in the file. That is the statement, the bank statement, the statement as to residency, the -- let's see there were four of them. There was the occupancy statement. There's the bank statement. There's the Latin services statement, and then there's that landscaping brochure.

[Trial Tr. 58:12-23.]

We also observe that the record contains a Certification Form, which Tovar signed on November 15, 2006. In this document, Tovar certified that he applied for a mortgage loan from WMC; and that by applying for the loan, he "completed a loan application containing various information on the purpose of the loan, the amount and source of the down payments, employment and income information, and assets and liabilities." Pl.'s Ex. 11 at 193. Tovar also certified that he understood and agreed that WMC reserved the right to change the mortgage loan review process to

25

a full documentation program," including "verifying the information provided on the application with the employer and/or financial institution." Id.

Contrary to Tovar's arguments, a creditor's actual verification of information is not an explicit requirement as to reasonable reliance. See In re Smith, 242 B.R. at 702 ("[W]hen there is evidence of materially fraudulent statements, little investigation is required for a creditor to have reasonably relied on the representations."). Nothing in the record suggests that WMC did not adhere to normal business practices, or that Tovar's misrepresentations were blatantly apparent in the Loan Application. Based on the totality of the circumstances, the record supports the bankruptcy court's inference of reasonable reliance on the Loan Application and other documents in the record.

**B.    Intent to Deceive**

Tovar next argues that the bankruptcy court erred in finding that he satisfied the requisite intent to deceive WMC (and subsequently HPF) when he applied for and obtained the Refinance Loan.

For the purposes of Section 523(a)(2)(B), intent is "established by showing either actual knowledge of the falsity of a statement, or reckless disregard for its truth . . . ." In re Gertsch, 237 B.R. at 167.

The bankruptcy court did not find Tovar's testimony credible. It specifically noted that in order to make Tovar's account plausible, it would have to find that WMC essentially fabricated various documents in Tovar's mortgage file – including

26

a brochure for a business that Tovar said existed on his Loan Application but which was fictitious:

> I mean that portion of it weighs heavily in my mind that it would have been an extraordinary event happening at the lender to prepare to go through and prepare a brochure for Tovar Landscape Design, to prepare all that. I just can't believe that that actually happened.

[Trial Tr. 64:12-23.]

The court further noted:

> Mr. Tovar added a dimension here to not only saying he was going to live in there, it was clear this loan would never have been made had they known. That's a pretty basic thing for the very reason if you have no interest in it yourself or not living there, you're less likely to perform.

[Trial Tr. 65: 4-9.]

The bankruptcy court thus found that Tovar submitted the Loan Application with the requite intent to deceive based on a number of factors: that Tovar Landscape Design never existed; that Tovar's monthly stated income was never $11,000; and that Tovar never intended to live on the Property. The court further determined that other documents in Tovar's loan file, such as the Latin Services Letter and Brochure, similarly demonstrated Tovar's intent to deceive.

We are unpersuaded by Tovar's contention that he was not aware of the misrepresentations stated in the Loan Application, or the other documents submitted or contained in his mortgage file. To the extent that there is any validity to his allegations, Tovar nonetheless executed various legal documents and certified that the information made therein was correct and true. This is no different than signing and submitting a

27

bankruptcy petition under the penalty of perjury, regardless of whether the debtor is an individual with limited English proficiency.  Ultimately, the person signing a document bears the legal responsibility as to the statements made therein.

Based on this record, the bankruptcy court did not err in finding that Tovar made written statements with the intent to deceive.  We therefore conclude that the bankruptcy court did not err in determining that HPF's claim was nondischargeable under Section 523(a)(2)(B).

**CONCLUSION**

For the reasons set forth above, the judgment of the bankruptcy court is AFFIRMED.